**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

                                        Plaintiff,

        - v -                                          Civ. No. 1:04-CV-714
                                                              (NAM/RFT)

BRUCE TANSKI, BRUCE TANSKI CONSTRUCTION
and DEVELOPMENT COMPANY, L.L.C., MOUNTAIN
LEDGE, L.P., MOUNTAIN LEDGE, L.L.C., MICHAEL
DENNIS, HOWARD F. JACOBSON, YATES SCOTT
LANSING, and MOUNTAIN LEDGE DEVELOPMENT
CORP.,

                                        Defendants.

**APPEARANCES:**                                **OF COUNSEL:**

HON. GLENN T. SUDDABY                  PAULA RYAN CONAN, ESQ.
OFFICE OF THE UNITED STATES ATTORNEY   Assistant United States Attorney
Attorney for Plaintiff
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261

U.S. DEPARTMENT OF JUSTICE             SEAN R. KEVENEY, ESQ.
Housing and Civil Enforcement Section
Attorney for Plaintiff
950 Pennsylvania Avenue NW
Washington, DC 20530

DREYER, BOYAJIAN LAW FIRM              WILLIAM J. DREYER, ESQ.
Attorney for Defendants Bruce Tanski and
Bruce Tanski Construction and Development
Company, L.L.C.
75 Columbia Street
Albany, NY 12210

O'CONNELL, ARONOWITZ LAW FIRM          NEIL H. RIVCHIN, ESQ.
Attorney for Defendants Mountain Ledge, L.P.,
Mountain Ledge, L.L.C., and Michael Dennis
54 State Street
9th Floor

Albany, NY 12207

| | |
|---|---|
| DONOHUE, SABO LAW FIRM | KATHLEEN L. WERTHER, ESQ. |
| Attorney for Howard F. Jacobson | ALVIN O. SABO, ESQ. |
| P.O. Box 15056 | KENNETH G. VARLEY, ESQ. |
| 24 Aviation Road | |
| Albany, NY 12212 | |
| | |
| TABNER, RYAN LAW FIRM | BENJAMIN F. NEIDL, ESQ. |
| Attorney for Yates Scott Lansing | |
| 18 Corporate Woods Boulevard | |
| Albany, NY 12211 | |

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

### I. INTRODUCTION

Plaintiff, the United States of America ("U.S."), makes a Motion to Amend their First Amended Complaint.  Dkt. No. 87.  In Plaintiff's Original Complaint, the allegation of violating Title VIII of the Civil Rights Act of 1968 revolved around one apartment complex, the McGregor Village Apartments.  Dkt. No. 1, Original Compl.  In the First Amended Complaint, four additional apartment complexes were identified and Mountain Ledge Development Corp. was added as a Defendant.  *Compare* Original Compl. *with* Dkt. No. 48, First Am. Compl.  Plaintiff now seeks to amend the Complaint, for a second time, to add Clifton Court Apartments, L.L.C., as a Defendant,[1] add two more apartment complexes, and add another cause of action against Bruce Tanski and Bruce Tanski Construction and Development Company, L.L.C. (the "Tanski Defendants"), alleging a violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, through discrimination based upon

---

[1] Bruce Tanski is the sole owner, officer, and director of the Clifton Court Apartments, L.L.C.  Dkt. No. 87, Pl.'s Second Mot. to Am., Pl.'s Mem. of Law at p. 1.

familial status.  Dkt. No. 87, Proposed Second Am. Compl. at ¶¶ 10-11, 41, & 52-56.  Mountain Ledge Development Corp., Mountain Ledge L.P., Mountain Ledge L.L.C., and Michael Dennis ("Mountain Ledge Defendants") oppose the Motion and bring a Cross Motion to Sever citing undue prejudice.[2]  Dkt. No. 88, Mountain Ledge Defs. Cross Mot., Mem. of Law at pp. 4-9.

For the reasons below, the Plaintiff's Motion is **GRANTED** and it is recommended that the Mountain Ledge Defendants' Cross Motion be **DENIED**.

## A.  Background

On June 21, 2004, Plaintiff filed a Complaint alleging that the Defendants violated the Fair Housing Act's prohibition against discrimination based on disability as to the design and construction of the McGregor Village Apartments in Wilton, New York.  Original Compl.; Dkt. No. 87, Pl.'s Second Mot. to Am., Mem. of Law at p. 1; Mountain Ledge Defs.' Cross Mot., Mem. of Law at p. 1.  Defendant Mountain Ledge, L.P., owned and constructed the McGregor Village Apartments.  Original Compl. at ¶ 9; Mountain Ledge Defs.' Cross Mot., Mem. of Law at p. 1. Defendant Mountain Ledge, L.P., hired the Tanski Defendants to design and construct the apartments and to make any improvements that were needed.  Mountain Ledge Defs.' Cross Mot., Mem. of Law at p. 1.  In turn, the Tanski Defendants arranged for Defendants Howard Jacobson and Yates Scott Lansing to prepare the building plans for the McGregor Village Apartments.  *Id.*

On March 9, 2005, by stipulation of the parties, a First Amended Complaint was filed, adding four apartment complexes and an additional Defendant, Mountain Ledge Development Corp.

---

[2] Defendants Bruce Tanski, Bruce Tanksi Construction and Development Company, L.L.C., and Yates Scott Lansing do not oppose the Motion to Amend.  *See* Dkt. Nos. 90 & 91.  Defendant Howard F. Jacobson seemingly does not oppose the Motion to Amend but does support the Mountain Ledge Defendants' Cross Motion to Sever.  *See* Dkt. No. 92, Kathleen L. Werner Aff., dated Oct. 28, 2005.

Dkt. Nos. 46 & 48.  During depositions of the Tanski Defendants, Plaintiff learned that the Tanski

Defendants may have also violated familial status discrimination provisions of the Fair Housing Act

by excluding families with more than one child from renting any second floor apartments.  Pl.'s

Second Mot. to Am., Mem. of Law at p. 1.  Additionally, despite previous interrogatory requests

asking the Tanski Defendants to identify all entities involved with the apartment complexes at issue

in the case, at the time of the deposition, Plaintiff also became aware for the first time of the

involvement of a second corporate entity, Clifton Court Apartments, L.L.C.[3]  *Id.*  Furthermore,

during discovery, forty-nine additional aggrieved persons were identified.[4]  Mountain Ledge Defs.'

Cross Mot., Mem. of Law at p. 2.

## II.  DISCUSSION

### A.  Standard for Motion to Amend

FED. R. CIV. P. 15(a) states, in pertinent part, that leave to amend a pleading should be

"freely given when justice so requires."  Indeed, leave to amend should be denied only in the face of

undue delay, bad faith, undue prejudice to the non-movant, futility of amendment, or where the

movant has repeatedly failed to cure deficiencies in previous amendments.  *Foman v. Davis*, 371

U.S. 178, 182 (1962); *Kropelnicki v. Siegel*, 290 F.3d 118, 130 (2d Cir. 2002) (citing *Chill v. Gen.*

*Elec. Co.*, 101 F.3d 263, 271-72 (2d Cir. 1996)).  District courts are vested with broad discretion to

---

[3] The Tanski apartment complexes include:  1) Clifton Court North Apartments; 2) Carol Jean Estates; 3) Cranberry Estates; 4) Andrea Court Apartments; 5) Pine Ridge II Apartments; and 6) Halfmoon Court Apartments. Pl.'s Second Mot. to Am., Mem. of Law at p. 1; Mountain Ledge Defs.' Cross Mot., Mem. of Law at p. 2.

[4] The Original Complaint and First Amended Complaint only identified one aggrieved individual.  *See* Original Compl.; *see also* First Am. Compl.  Despite the Mountain Ledge Defendant's claims that an extra forty-nine aggrieved persons were added, there does not seem to be a consensus as to the number of additional aggrieved persons.  The Tanski Defendants claim the addition of forty-nine aggrieved individuals whereas Yates Scott Lansing claims forty-seven, and Howard Jacobson claims twenty-six.  Dkt. No. 104, Tanski Defs.' Disc. Lt. Brief at p. 1; Dkt. No. 106, Lansing Disc. Mem. of Law at p. 1; Dkt. No. 97, Jacobson Disc. Mem. of Law at p. 5.

grant a party leave to amend the pleadings. *See Local 802, Assoc. Musicians of Greater New York v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998). "The party opposing a motion for leave to amend has the burden of establishing that granting such leave would be unduly prejudicial." *New York v. Panex Indus., Inc.*, 1997 WL 128369, at *2 (W.D.N.Y. Mar. 14, 1997) (citing *Saxholm AS v. Dynal, Inc.*, 938 F. Supp. 120, 123 (E.D.N.Y. 1996)); *see also Lamont v. Frank Soup Bowl*, 2000 WL 1877043, at *2 (S.D.N.Y. Dec. 27, 2000) (citations omitted). This requires the non-movant to "do more than simply claim to be prejudiced." *Breyette v. Amedore*, 205 F.R.D. 416, 418 (N.D.N.Y. 2002) (citing *Bryn Mawr Hosp. v. Coatesville Elec. Supply Co.*, 776 F. Supp. 181, 185 (E.D. Pa. 1991)).

## 1.  Prejudice to the Parties

In determining what constitutes prejudice from the amendment of a pleading, courts within the Second Circuit generally consider "whether the assertion of the new claim or defense would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (quoting *Block v. First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir. 1993)). Courts will further consider whether the opponent was otherwise on notice of the new claim, and whether that claim derives from the same facts set forth in the original pleading. *See, e.g.*, *Hanlin v. Mitchelson*, 794 F.2d 834, 841 (2d Cir. 1986); *Tokio Marine & Fire Ins. Co. v. Employers Ins.*, 786 F.2d 101, 103 (2d Cir. 1986).

In this matter, Plaintiff seeks to add a new claim as well as another Defendant and the Mountain Ledge Defendants claim that a second amendment to the Complaint would result in undue

prejudice.  In terms of discovery, the Uniform Pretrial Scheduling Order (UPTSO) set the discovery deadline for September 7, 2005, however, by Order, dated August 25, 2005, this Court issued a stay of all deadlines with the exception of certain scheduled discovery and mediation.[5]  Dkt. No. 27, UPTSO; Dkt. No 86, Text Order, dated Aug. 25, 2005.  If the Second Amended Complaint were to be accepted, an extension of the discovery deadline would be necessary.

However, the Mountain Ledge Defendants do not claim they would be prejudiced by having to expend significant resources to conduct further discovery nor do they claim that the proposed amendments would significantly delay resolution of the action.  Mountain Ledge Defs.' Cross Mot., Mem. of Law at p. 5.  Instead, the Mountain Ledge Defendants state that there will be presentation of witnesses and evidence during trial that have no connection to the McGregor Village Apartments and that the jury may not be able to separate the Mountain Ledge Defendants from the Tanski Defendants in distinguishing testimony and assessing damages, despite jury instructions that may be given to clarify the situation.  *Id.*

Leave to amend a pleading is freely given unless there is some form of undue delay, bad faith, undue prejudice or futility.  None of those factors are present in the instant case.  Neither the Mountain Ledge Defendants nor any of the other Defendants in the action have claimed undue

---

[5] On August 25, 2005, this Court held a conference to discuss the filing of a motion to amend the First Amended Complaint.  *See* Dkt. No. 86, Text Order, dated Aug. 25, 2005.  Anticipating that discovery may need to be extended, the parties were required to submit a status letter and memorandum of law advising the Court of how much time would be needed to complete discovery.  *See id.*; *see also* Text Order, dated Oct. 31, 2005.  The Proposed Second Amended Complaint seeks to add another claim and another Defendant.  The Mountain Ledge Defendants seek to depose eighteen aggrieved individuals along with the disability advocate for the first complainant and ask for an extension till May 1, 2006, for discovery.  Dkt. No. 99, Mountain Ledge Defs.' Ltr.  Plaintiff, on the other hand, states that an extension of discovery should not be permitted in regards to the aggrieved individuals and any extension of the discovery deadline should be limited solely to the new cause of action and should be completed by February 7, 2006.  Dkt. No. 102, Pl.'s Disc. Mem. of Law at p. 1; Dkt. No. 103, Pl.'s Disc. Lt., dated Nov. 4, 2005; Pl.'s Mem. of Law at p. 4.  If an extension is granted as to the aggrieved individuals, Plaintiff asks for an extension until January 7, 2006.  Pl.'s Disc. Lt.

delay, bad faith, or futility.  In fact, all but the Mountain Ledge Defendants have consented to the

second proposed amendments.  *See supra* n.2.  Only the Mountain Ledge Defendants claim undue

prejudice and even though that is their claim, the explanation and reasoning provided by them does

not fulfill the standard set forth in determining undue prejudice.[6]  Therefore, Plaintiff's Motion to

Amend the First Amended Complaint is **granted.**

### B.  Standard for Motion to Sever

In addition to opposing Plaintiff's Second Motion to Amend, the Mountain Ledge

Defendants bring a Cross Motion to Sever.  Dkt. No. 88.  Inasmuch as this Court could not identify

any authorization permitting this Court to decide such a motion, and without the consent of the

parties and referral by the District Judge, in accordance with 28 U.S.C. § 636(c), this Court is

without jurisdiction to decide the mater.  To the extent the Court has already considered and decided

the arguments with reference to the Motion to Amend, the Court will consider the Cross Motion to

Sever separately and render a recommendation to the District Judge.

FED. R. CIV. P. 21 states in part that "[p]arties may be dropped or added by order of the court

on motion of any party or of its own initiative at any stage of the action and on such terms as are

just.  Any claim against a party may be severed and proceeded with separately."[7]  Whether or not a

party or claim is severed is within the discretion of the district court.  *S.E.C. v. Pignatiello*, 1998

WL 293988, at *3 (S.D.N.Y. June 5, 1998); *see also A&E Products Group, L.P. v. The Accessory*

_____

[6] Additionally, the third factor in determining undue prejudice, whether Plaintiff would be prevented from bringing a timely action in another jurisdiction, is not applicable in this case.

[7] FED. R. CIV. P. 21 is different than FED. R. CIV. P. 42(b).  "The distinction between these two rules is that 'separate trials usually will result in one judgment, but severed claims become entirely independent actions to be tried, and judgment entered thereon, independently.'" *Gonzalez v. City of Schenectady*, 2001 WL 1217224, at *10 (S.D.N.Y. Sept. 17, 2001) (quoting 9 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2387).  The same standard is used to make a determination under either rule.  *Gonzalez*, 2001 WL 1217224, at *10.

*Corp.*, 2002 WL 1041321, at *1 (S.D.N.Y. May 23, 2002) (citing *New York v. Hendrickson Bros., Inc.,* 840 F.2d 1065, 1082 (2d Cir.1988)).  The "[s]evered claims become independent actions and judgment is entered upon them independently." *A&E Products Group, L.P. v. The Accessory Corp.*, 2002 WL 1041321, at *1 (citation omitted).

In deciding a motion to sever, courts will consider: "1) whether the issues sought to be tried separately are significantly different from one another; 2) whether the separable issues require the testimony of different witnesses and different documentary proof; 3) whether the party opposing the severance will be prejudiced if it is granted; and 4) whether the party requesting the severance will be prejudiced if it is not granted." *S.E.C. v. Pignatiello*, 1998 WL 293988, at *3.  Severance may be viable when "'[t]he potential inferences or conclusions that the jury may draw from the different claims and the strength of the respective cases could unfairly prejudice the defendants, and perhaps one of the plaintiffs.'" *Cestone v. General Cigar Holdings, Inc.*, 2002 WL 424654, at *3 (S.D.N.Y. Mar. 18, 2002) (quoting *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 581 (E.D.N.Y. 1999) & *Ropfogel v. Wise*, 112 F.R.D. 414, 416 (S.D.N.Y. 1986) for the proposition that "separate trials are warranted where there is a real danger of admitting evidence that is admissible against one of the parties but not against the other and that could unfairly influence the jury's conclusions"). However, because there is a presumption that all claims would be encompassed in a single trial, severance will only be allowed in "'exceptional circumstances where there are special and persuasive reasons for departing from this practice[.]'"[8] *Cramer v. Fedco Auto. Components Co., Inc.*, 2002 WL 1677694, at *1 (W.D.N.Y. July 18, 2002) (quoting *Miller v. Am. Bonding Co.*, 257

---

[8] The Second Circuit has noted that "although . . . severance orders may be challenged by way of a petition for a writ of mandamus, . . . such relief will be granted only upon a showing of extraordinary circumstances or such gross abuse of discretion as to amount to action beyond the court's power[.]"  *Garber v. Randell*, 477 F.2d 711, 715 n.2 (2d Cir. 1973) (internal citations omitted).

U.S. 304, 307 (1921)).

Here, the Mountain Ledge Defendants state that the case against them will require different witnesses and proof than those against the other Defendants.  Mountain Ledge Defs.' Cross Mot., Mem. of Law at p. 7.  This is so because different apartment complexes are involved along with different designers, different locations and times, different aggrieved persons, and different municipalities that issued certificates of occupancy.  *Id.* at pp. 7-8.  In addition, the Mountain Ledge Defendants note that severance would avoid confusion by the jury in differentiating between the testimony and proof as to the McGregor Village Apartments and the Tanski Defendants and their other complexes and additional cause of action.  *Id.* at p. 8.  Furthermore, the Mountain Ledge Defendants believe that any judgement rendered against the Tanski Defendants will invariably lead to a judgment against the Mountain Ledge Defendants.  *Id.* at p. 9.

In response to the Mountain Ledge Defendants' Cross Motion to Sever, Defendant Lansing states that he takes no position as to whether there should be severance, although if severance is granted as to those Defendants, then Lansing should also be severed as the claim against Lansing only involves the McGregor Village Apartments.  Dkt. No. 113, Benjamin F. Neidl Affirm. at ¶¶ 4-6.  Defendant Jacobson supports severance of the claims regarding the McGregor Village Apartments for the reasons set forth by the Mountain Ledge Defendants and also requests that the claim against him be severed as well.  Dkt. No. 92, Kathleen L. Werther Aff., dated Oct. 28, 2005, at ¶¶ 1-4.

Plaintiff, however, opposes severance as it would not serve judicial economy and no undue prejudice would occur were severance denied.  Dkt. No. 115, Pl.'s Resp. to Cross Mot. to Sever at pp. 3 & 5.  Plaintiff further states that there would be duplication in testimony and proof submitted

as the Tanski Defendants participated in the design and construction of the McGregor Village Apartments along with the other Tanksi apartment complexes. *Id.* at p. 4. Plaintiff intends to prove that the steps on the Tanski properties and the McGregor Village Apartments constitute discrimination against those with disabilities. *Id.* at p. 5. Furthermore, Mr. Hecker, an expert for Plaintiff, would also testify regarding his survey of the McGregor Village Apartments and the other Tanski properties. *Id.* at p. 4. Thus, it would be an additional expenditure for Plaintiff, the Tanski Defendants, and the judiciary if severance were permitted. *Id.* at pp. 4-5. Plaintiff also states there could be a risk of inconsistent verdicts. *Id.*

Severance is deemed to be appropriate when it will serve the ends of justice and further the prompt and efficient disposition of litigation. *S.E.C. v. Pignatiello*, 1998 WL 293988, at *3. In this case, the Court must first examine if the issues sought to be tried separately are significantly different from one another. The Mountain Ledge Defendants seek to sever themselves with regards to the claim of discrimination based on disability in violation of the Fair Housing Act, which involves the Tanski Defendants and several other Tanski apartment complexes, and inevitably from the new claim against the Tanski Defendants for violations of the Fair Housing Act's prohibition on discrimination based on familial status.

Here, the familial status discrimination claim is wholly unrelated to the Mountain Ledge Defendants and would require different witnesses and proof. Nonetheless, possible inferences or conclusions a jury could draw on the familial status claim as to the Mountain Ledge Defendants could be virtually eliminated through proper jury instructions and clarification during trial as to whom the familial status claim is against, thereby obviating any undue prejudice that may occur.

Moreover, the disability discrimination claim against the Mountain Ledge Defendants is

clearly intertwined with the Tanski Defendants.  Even though different complexes are involved, the disability claim against the Mountain Ledge Defendants and the Tanski Defendants is the same and would involve the same expert testimony as well as some of the same evidence.  The Mountain Ledge Defendants allege that one of the significant factors in granting severance is that the Proposed Second Amended Complaint lists two more apartment complexes that are not related to the Mountain Ledge Defendants.  Mountain Ledge Defs.' Mot., Mem. of Law at p. 7.  However, we find that the cases are not significantly different in that the First Amended Complaint included four other apartment complexes not related to the McGregor Village Apartments and therefore two additional apartment complexes should not significantly effect the Mountain Ledge Defendants.  In a similar vein, even though the Mountain Ledge Defendants also state that the Tanski apartment complexes were designed by different individuals than the McGregor Village Apartments we still see no significant difference.  No other parties, except for the Clifton Court Apartments, L.L.C., which is owned by Bruce Tanski, have been added in the Proposed Second Amended Complaint.  The allegation that the Tanski Defendants have constructed and designed all of the apartments, including the McGregor Village Apartments, and any other individuals involved in that process are associated with the initial Complaint against the Mountain Ledge Defendants, namely Defendants Jacobson and Lansing leaves us with the same conclusion.

The next factor the Court must consider concerns testimony and proof.  Were the Cross Motion to Sever granted, Plaintiff would indeed be forced to try the same case twice on the disability discrimination cause of action.  Similar evidence would have to be proffered in two trials regarding the design and construction by the Tanski Defendants and the same expert would have to testify on the same issue twice.  On the other hand, the Mountain Ledge Defendants may be

prejudiced with regard to the new cause of action against only the Tanski Defendants regarding familial status violations pursuant to the Fair Housing Act.  The Mountain Ledge Defendants fear they may be presumed liable solely because of evidence against the other Defendants and that the jury could associate them with the wrongful acts of other Defendants.  Mountain Ledge Defs.' Cross Mot., Mem. of Law at pp. 8-9.  They further state that they seek to avoid jury confusion as to the evidence presented, avoid jury confusion regarding any jury instructions presented in determining liability and damages, and to promote judicial economy.  However, the Court finds that these arguments do not constitute extraordinary circumstances to require severance of the claims against the Mountain Ledge Defendants as there are adequate protections from this type of effect with proper jury instructions.  We further find that the prejudice to Plaintiff in trying seemingly identical trials outweighs any purported prejudice to Defendants.

Therefore, since severance would neither serve the interests of justice nor the prompt and efficient resolution of the claims, this Court recommends that the Mountain Ledge Defendants' Cross Motion to Sever be **denied**.[9]

### C.  Discovery

Finally, discovery issues have arisen as a result of the additional aggrieved persons named by Plaintiff.  First, Defendants assert that Plaintiff be required to produce evidence regarding damage and injury to the aggrieved individuals as well as their medical histories.  Dkt. No. 102, Pl.'s Disc. Mem. of Law at p. 2; Dkt. No. 100, Mountain Ledge Defs.' Disc. Mem. of Law at p. 1; Dkt. No. 97, Jacobson Disc. Mem. of Law at pp. 1-2; Dkt. No. 106, Lansing Disc. Mem. of Law at pp. 1-2; Dkt.

---

[9] Additionally, insofar as Defendants Jacobson and Lansing also seek to be severed, this Court recommends denial of severance.

No. 104, Tanski Defs.' Disc. Lt. Brief at pp. 1-2.  Defendants also seek to have Plaintiff produce,
through a deposition notice, the aggrieved individuals for depositions rather than having Defendants
issue individual subpoenas for the aggrieved persons.  Pl.'s Disc. Mem. of Law at p. 2; Mountain
Ledge Defs.' Disc. Mem. of Law at p. 1; Jacobson Disc. Mem. of Law at pp. 1-2; Lansing Disc.
Mem. of Law at pp. 1-2; Tanski Defs.' Disc. Lt. Brief at pp. 1-2.

Plaintiff states that it has no attorney-client nor agent-principal relationship with the
aggrieved individuals, that Plaintiff is not in possession, custody, or control over certain private
records belonging to the aggrieved individuals, and that it is under no obligation to produce the
aggrieved individuals for depositions as the U.S. does not represent them.  Pl.'s Disc. Mem. of Law
at p. 1.  Plaintiff also notes that the issue of Plaintiff's relationship with the aggrieved individuals
was only raised on August 24, 2005, merely fourteen days before the close of discovery and that the
Defendants had plenty of opportunities during the discovery period to depose the aggrieved persons.
*Id.*

Plaintiff, the Mountain Ledge Defendants, and Defendant Lansing analogize the relationship
between the U.S. and aggrieved persons with that of the Equal Employment Opportunity
Commission ("EEOC") and a class of individuals in a lawsuit pursuant to Title VII.  *See* Pl.'s Disc.
Mem. of Law at p. 6; Mountain Ledge Defs.' Disc. Mem. of Law at pp. 3-4; Lansing Disc. Mem. of
Law at p. 7.  Plaintiff states that no attorney-client privilege exists because of the public interest
involved to enforce private rights and that they do not have to produce the aggrieved individuals for
depositions.  Pl.'s Disc. Mem. of Law at p. 6.  Defendants claim on the other hand that Plaintiff is
acting on behalf of the aggrieved persons as their attorney and therefore, they should not have to
issue subpoenas to depose the aggrieved individuals.  Mountain Ledge Defs.' Disc. Mem. of Law at

*-13-*

pp. 3-4; Jacobson Disc. Mem. of Law at p. 5; Lansing Disc. Mem. of Law at p. 7; Tanski Defs.'

Disc. Lt. Brief at p. 2.  In addition to depositions, as mentioned above, Defendants seek evidence,

including documentation and medical records, as to the aggrieved individuals' handicaps, injuries

and damages, which includes emotional distress.  Mountain Ledge Defs.' Disc. Mem. of Law at pp.

3-4; Jacobson Disc. Mem. of Law at pp. 4-5; Lansing Disc. Mem. of Law at pp. 3-6; Tanski Defs.'

Disc. Lt. Brief at p. 2.

Under § 3614(a) of the Fair Housing Act, the Attorney General may commence a civil action

in the appropriate United States district court if there is "reasonable cause to believe . . . that any

group of persons has been denied any of the rights granted by [the Fair Housing Act] and such

denial raises an issue of general public importance[.]"  The action is commenced on behalf of an

aggrieved person.  42 U.S.C. § 3612(o).  The court "may award . . . monetary damages to persons

aggrieved[.]"  *Id.* at § 3614(d)(B).  Moreover, if the Attorney General commences the lawsuit and

the court finds that housing discrimination has or is about to occur, then the court can grant relief to

the same extent as under 42 U.S.C. § 3613.  Under § 3613, "the court may award to the plaintiff

actual and punitive damages, and . . . may grant as relief, as the court deems appropriate, any

permanent or temporary injunction, temporary restraining order, or other order (including an order

enjoining the defendant from engaging in such practice or ordering such affirmative action as may

be appropriate)" as well as reasonable attorney's fees and costs.  *Id.* at § 3613(c)(1) & (2).

Furthermore, "any person may intervene in a civil action commenced by the Attorney General . . .

which involves an alleged discriminatory housing practice with respect to which such person is an

aggrieved person[.]"  *Id.* at § 3614(e).

Enforcement of Title VII is similar to that of the Fair Housing Act in that it allows for a

private cause of action by an aggrieved individual as well as allowing for the EEOC to bring a lawsuit on behalf of aggrieved individuals. *Williams v. United States*, 665 F. Supp. 1466, 1470 (D. Or. 1987) (citing *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 357, & 365-66 (1977)). The "dual mechanism for enforcing Title VII was established in part because the EEOC's interests may not always coincide with those of the aggrieved [individuals]" because the EEOC may have a competing or conflicting interest. *Id.* at 1470; *Gormin v. Brown-Forman Corp.*, 133 F.R.D. 50, 52 (M.D. Fla. 1990). When the EEOC files a lawsuit in its name seeking relief for the aggrieved individuals, it does "not undertak[e] class representation" because it acts to "'vindicate the public interest[.]'" *Williams v. United States*, 665 F. Supp. at 1470 (quoting *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 326 (1979)); *see also EEOC v. Morgan Stanley & Co., Inc.*, 206 F. Supp. 2d 559, 562 (S.D.N.Y. 2002). As such, it has been held that there is no attorney-client relationship between the EEOC and aggrieved individuals when the EEOC brings enforcement actions pursuant to Title VII. *Williams v. United States*, 665 F. Supp. at 1470 (citing *Bratton v. Bethlehem Steel Corp.*, 649 F.2d 658, 669 (9th Cir. 1980)); *see also United States EEOC v. TIC-The Indus. Co.*, 2002 WL 31654977, at *6 (E.D. La. Nov. 21, 2002) (holding that because no evidence was presented as to whether the aggrieved individual consented to or considered the EEOC to be his attorney, there was no attorney-client privilege); *Gorman v. Brown-Forman Corp.*, 133 F.R.D. at 53 (holding that there is no attorney-client relationship between the EEOC and aggrieved individuals under Title VII or the Age Discrimination in Employment Act because they both provide for "EEOC enforcement actions in addition to individual suits"). Furthermore, because no attorney-client relationship exists, it is proper to send deposition subpoenas. *Gorman v. Brown-Forman Corp.*, 133 F.R.D. at 53.

However, if an aggrieved individual "expressly asserted [a] desire to have EEOC counsel

render [the individual] confidential legal advice," which is shown through affidavits and other documents, then there would be an attorney-client relationship with that individual. *Id.* In such instances, courts have found that an attorney-client relationship was created between the EEOC and an aggrieved individual. *See EEOC v. Int'l Profit Assocs., Inc.*, 206 F.R.D. 215, 218-19 (N.D. Ill. 2002) (holding the attorney-client privilege existed as there were confidential communications and the aggrieved persons told the EEOC that they wished to be represented by the EEOC); *EEOC v. Johnson v. Higgins, Inc.*, 1998 WL 778369, at *4-7 (S.D.N.Y. Nov. 6, 1998) (stating that affidavits of the individuals established the date when the attorney-client privilege applied); *EEOC v. Mitsubishi Motor Mfg. of Am., Inc.*, 960 F. Supp. 164, 167-68 (C.D. Ill. 1997) (noting that the "EEOC[] [has a] legitimate interest in communicating legal advice and information to those persons that it will potentially represent in this action"); *EEOC v. Chemtech, Int'l Corp.*, 1995 WL 608333, at *2 (S.D. Tex. May 17, 1995) (stating that an attorney-client relationship was created because the aggrieved individual, through an affidavit, believed there was a relationship and that there were confidential communications between the EEOC counsel and the individual); *EEOC v. HBE Corp.*, 1994 WL 376273, at *2 (E.D. Mo. May 19, 1994) (holding that the attorney-client privilege applied in an EEOC action whereby the individual provided an affidavit stating that he had sought legal advice from EEOC's attorney with the understanding that their communications were confidential); *EEOC v. Georgia-Pacific Corp.*, 1975 WL 267, at *3-4 (D. Or. Nov. 10, 1975) (stating that the attorney-client privilege was created as the aggrieved individual sought "expert legal advice" from the EEOC's attorney and the aggrieved individual submitted an affidavit stating her belief that the EEOC was representing her).

 In the context of the Fair Housing Act, 42 U.S.C. § 3604(f)(1) states that it is unlawful "[t]o

discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer

or renter because of a handicap of:  (A) that buyer or renter, [] (B) a person residing in or intending

to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated

with that buyer or renter."  (Footnote omitted).  Discrimination includes:

> in connection with the design and construction of covered multifamily dwellings . . ., a
> failure to design and construct those dwellings in such a manner that (i) the public use
> and common use portions of such dwellings are readily accessible to and usable by
> handicapped persons; (ii) all the doors designed to allow passage into and within all
> premises within such dwellings are sufficiently wide to allow passage by handicapped
> persons in wheelchairs; and (iii) all premises within such dwellings contain the
> following features of adaptive design: (I) an accessible route into and through the
> dwelling; (II) light switches, electrical outlets, thermostats, and other environmental
> controls in accessible locations; (III) reinforcements in bathroom walls to allow later
> installation of grab bars; and (IV) usable kitchens and bathrooms such that an individual
> in a wheelchair can maneuver about the space.

42 U.S.C. § 3604(f)(3)(C).

Violations of this provision where housing is "inadequately designed and constructed to serve

persons with disabilities denies that class of persons rights granted by the Act . . . [and] that denial

raises an issue of general public importance."  *United States v. Hartz Constr. Co., Inc.*, 1998 WL

42265, at *2 (N.D. Ill. Jan. 28,1998) (internal quotation marks omitted); *see also United States v.*

*Quality Built Constr., Inc.*, 309 F. Supp. 2d 756, 760-61 (E.D.N.C. 2003).

In a private cause of action, to establish a prima facie case under 42 U.S.C. § 3604(f)(3)(B),

for those already "residing in the dwelling," four elements must be shown:  "(1) the plaintiff suffers

from a handicap or is a person associated with a handicapped person" as defined by § 3602(h); "(2)

the defendant knows of the handicap or reasonably should be expected to know of it; (3)

accommodation of the handicap may be necessary to afford the plaintiff an equal opportunity to use

and enjoy the dwelling; and (4) the defendant refused to make such an accommodation."

*Roseborough v. Cottonwood Apartments*, 1996 WL 490717, at *2 (N.D. Ill. Aug. 26, 1996) (citing

*HUD v. Ocean Sands*, 1993 WL 343530, at *11 (H.U.D.A.L.J. Sept. 3, 1993)); *see also Bentley v. Peace and Quiet Realty 2 LLC*, 367 F. Supp. 2d 341, 345 (E.D.N.Y. 2005) (citing *United States v. California Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997)).  "Handicap" means, "with respect to a person, (1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment[.]"  42 U.S.C. § 3602(h).  It only follows that the government, in bringing a lawsuit on behalf of aggrieved individuals, would also need to establish that the aggrieved individuals were in fact handicapped, whether or not they reside at the apartment complexes, when bringing suit pursuant to 42 U.S.C. § 3604(f) for housing discrimination based on disabilities.

Additionally, pursuant to § 3614(d) of the Fair Housing Act, the government may seek compensatory damages for aggrieved individuals without the intervention of the aggrieved individual.  *United States v. Balistrieri*, 981 F.2d 916, 931-32 (7th Cir. 1992); *see also United States v. City of Jackson, Miss.*, 359 F.3d 727, 735 n.22 (5th Cir. 2004); *United States v. Wagner*, 930 F. Supp. 1148, 1152 (N.D. Tex. 1996) (commenting that "[i]n a civil enforcement action brought by the United States on behalf of aggrieved individuals . . ., the Court may grant the same relief that could be granted in a private enforcement action," which accrues to the aggrieved persons and includes actual and punitive damages (citing *United States v. Scott*, 809 F. Supp. 1404, 1406 (D. Kan. 1992) & 42 U.S.C. §§ 3612(o)(3) & 3613(c)(1))).  "Civil rights plaintiffs are entitled to recover compensatory damages for emotional distress when they establish a causal connection between the distress and a defendant's discriminatory conduct."  *United States v. Space Hunters, Inc.*, 2004 WL 2674608, at *7 (S.D.N.Y. Nov. 23, 2004) (citing *Ragin v. Harry Macklowe Real*

*Estate Co.*, 6 F.3d 898, 907 (2d Cir. 1993)); *see also Balachowski v. Boidy*, 2000 WL 1365391, at *11 (N.D. Ill. Sept. 20, 2000) (stating that "a compensatory damage award 'must bear a reasonable relation to actual injury sustained' . . . and that awards for emotional distress [have been upheld] despite the lack of detailed description of that distress" (citing *Douglas v. Metro Rental Services, Inc.,* 827 F.2d 252, 256-57 (7th Cir. 1987) and *Crumble v. Blumthal,* 549 F.2d 462, 467 (7th Cir. 1977))).

In terms of damages for emotional distress, "proof of mental anguish or emotional distress does not have to include medical testimony and it may consist of the plaintiff's testimony, alone, as corroborated by reference to the circumstances of the alleged misconduct." *Broome v. Biondi*, 17 F. Supp. 2d 211, 224 (S.D.N.Y. 1997) (internal quotation marks omitted) (citing, *inter alia*, *Miner v. City of Glens Falls*, 999 F.2d 655, 663 (2d Cir. 1993)); *see also Balistrieri*, 981 F.2d at 931-32 (noting that testimony may be enough provided that the individual reasonably and sufficiently explains the circumstances surrounding the injury and does not rely on mere conclusory statements).[10]  Furthermore, the plaintiff need not submit empirical evidence similar to that of medical testimony nor must the emotional distress damages "be amenable to precise calculation." *Byrd v. Brandeburg*, 932 F. Supp. 198, 201 (N.D. Ohio 1996) (citing, *inter alia*, *Morgan v. Sec'y of Hous. and Urban Dev.*, 985 F.2d 1451, 1459 (10th Cir. 1993); *Baumgardner v. Sec'y, U.S. Dep't of*

---

[10] The Seventh Circuit set forth factors to determine when testimony itself or in conjunction with the circumstances of the case would suffice:

> in determining whether the evidence of emotional distress is sufficient to support an award of damages, we must look at both the direct evidence of emotional distress and the circumstances of the act that allegedly caused the distress. . . . The more inherently degrading or humiliating the defendant's action is, the more reasonable it is to infer that a person would suffer humiliation or distress from that action; consequently, somewhat more conclusory evidence of emotional distress will be acceptable to support an award of emotional distress.

*Balistrieri*, 981 F.2d at 932 (citation omitted).

*Hous. and Urban Dev.*, 960 F.2d 572, 581 (6th Cir. 1992)).

In this case, as the Fair Housing Act is similar in nature to Title VII in its enforcement provisions, no attorney-client relationship exists between Plaintiff and the aggrieved individuals, without a showing of much more. *EEOC v. Morgan Stanley & Co., Inc.*, 206 F. Supp. 2d 559, 562 (S.D.N.Y. 2002) (observing that the case law is not "definitive regarding the moment the EEOC enters into an attorney-client relationship with the members of the class"). The Court accepts Plaintiff's representation that they do not represent the aggrieved individuals, as a matter of law, and accordingly will rely upon their word. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (discussing the Doctrine of Judicial Estoppel).[11] However, to the extent that any of the named aggrieved persons have expressed that there were confidential communications between Plaintiff and themselves and that they wished to be represented by Plaintiff, an attorney-client relationship would be created as to those individuals and Plaintiff must produce those individuals for deposition. Furthermore, the element of control over the aggrieved individuals is apparently absent, however, if

---

[11] The parties are put on notice that they may be precluded from asserting a contrary position as to the attorney-client relationship if in hindsight it becomes convenient to innoculate certain aggrieved individuals' records from disclosure by virtue of the attorney-client privilege. The Court wants to deter any shift of legal position in order to fit other legal discussions related to this case, which would be to the detriment of opposing parties as it may relate to the disclosure of relevant information. The Doctrine of Judicial Estoppel, which is now applicable to this case by virtue of this Report-Recommendation and Order, is succinctly discussed in *New Hampshire v. Maine*:

> "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895). This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich,* 530 U.S. 211, 227, n. 8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000); see 18 Moore's Federal Practice § 134.30, p. 134-62 (3d ed. 2000) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding"); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1981) (hereinafter Wright) ("absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory").

532 U.S. at 749; *see also Mulvaney Mechanical, Inc. v. Sheet Metal Workers*, 288 F.3d 491, 504 (2d Cir. 2002) (*vacated on other grounds by* 538 U.S. 918 (2003)).

*-20-*

it is established that Plaintiff has control over the aggrieved individuals - third parties in this action - it may be obligated to produce the requested documents and witnesses.  FED. R. CIV. P. 34(a)(1).[12]  If no proof from the aggrieved individuals is produced claiming the attorney-client relationship and if the Defendants seek to depose the aggrieved persons, subpoenas will have to be issued to require appearance for a deposition.  Said depositions should be pursued with all deliberate speed.  To reiterate, since Plaintiff bears the burden of proof in establishing the aggrieved individuals' handicap, Plaintiff must provide Defendants with the nature of the handicap of any aggrieved person falling within that particular cause of action.  *See supra* pp. 17-18.

With regard to compensatory damages, if Plaintiff attempts to seek it on behalf of the aggrieved individuals, Plaintiff may provide, through testimony of the aggrieved individuals, what emotional distress each individual suffered.  The Court cannot presume emotional distress from the proof of any discrimination.  Plaintiff must actually prove the aggrieved individual suffered from emotional distress and that the discrimination precipitated the distress.  *United States v. Balistrieri*, 981 F.2d at 931 (citing *Carey v. Piphus*,  435 U.S. 247, 263-64 (1978)).  As the testimony may not

---

[12]    The rule is rather clear that where documents are in the "possession, custody, or control of a party," they must be produced.  FED. R. CIV. P. 34(a)(1).  This Rule has been extended to documents that may be in the possession of a third party.  *United States v. Freidus*, 1989 WL 140254, at *2-3 (S.D.N.Y. Nov. 13, 1989) (party husband compelled to produce documents held by his nonparty wife); *see also* 7 JAMES WM. MOORE ET. AL, MOORE'S FEDERAL PRACTICE § 34.14 (3d ed. 2005).  The term control in the context of discovery is to be broadly construed.  *M.L.C. v. North Am. Philips Corp.*, 109 F.R.D. 134, 136 (S.D.N.Y. 1986) (citing *Herbst v. Able*, 63 F.R.D. 135 (S.D.N.Y. 1972)).  The critical inquiry is whether the party-litigant can exercise custody and control over the documents and the person.  *Hunter Douglas, Inc. v. Comfortex Corp.*, 1999 WL 14007, at *3 (S.D.N.Y. Jan. 11, 1999).  The rubric of this query is not limited to whether the party has a legal right to those documents but rather that there is "access to the documents" and "ability to obtain the documents."  *Hunter Douglas, Inc. v. Comfortex Corp.*, 1999 WL 14007, at *3 (citing *Cooper Indus., Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 920 (S.D.N.Y.1984) & *Addamax Corp. v. Open Software Found., Inc.*, 148 F.R.D. 462, 467 (D. Mass.1999)); *Bank of New York v. Meriden BIAO Bank Tanzania Ltd*, 171 F.R. D. 135, 146 (S.D.N.Y. 1997) (finding that "documents are considered to be under a party's control when the party has the right, authority, or **practical ability** to obtain the documents from a non-party to the action") (emphasis added); *M.L.C. v. North Am. Philips Corp.*, 109 F.R.D. at 136  (the legal right to the production of the document).  The burden of establishing control over the documents being sought rests with the demanding party.  *Desmeth v. Samsung Am., Inc.*, 1998 WL 74297, at *9 (S.D.N.Y. Feb 20, 1998); 7 MOORE FEDERAL PRACTICE § 34.14[2][b].

be conculsory and a causal connection must be made between the emotional distress and Defendants' conduct, and since Plaintiff would have the burden of proof on the issue of damages, Plaintiff is to provide Defendants with information as to the mental anguish or emotional distress each aggrieved individual claims to have suffered, though medical evidence need not be presented. Plaintiff cannot seek compensatory damages without informing Defendants as to the nature of damages suffered by the aggrieved individuals as it would be highly unfair to uncover the emotional distress during testimony at trial and not during the discovery phase of the litigation. If Plaintiff proffers to Defendants that the aggrieved individuals suffered only "garden variety" emotional distress, which does not invoke medical treatment, any attempts to place into evidence greater emotional disturbance of a significant medical condition will be met with preclusion, unless such information and documentation is forwarded to Defendants during discovery.

Plaintiff raised two other discovery arguments which we should address. Inasmuch as Plaintiff is being required to disclose facts, and not impression or opinions of the lawyers, the work product doctrine may be inapplicable. *In re Six Grand Jury Witnesses*, 979 F.2d 939, 944-45 (2d Cir.1992) (ruling that relevant, non-privileged facts may be discovered (citing *Hickman v. Taylor*, 329 U.S. 495, 511 (1948))); *In re Savitt/Adler Litig.*, 176 F.R.D. 44, 48 (N.D.N.Y. 1997). Lastly, Plaintiff suggests that if it came into possession of the aggrieved individuals' documents, such as medical records, especially if it decides that "it needs the medical records in order to establish that any disabled aggrieved person is disabled or has been injured by the Defendants' discriminatory acts," those documents may still be subject to a privilege and should not be released unless pursuant to a confidentiality agreement. The knottiness of this suggestion rests with Plaintiff's repeated assertion that there is neither an attorney-client nor a principal and agency relationship with the

*-22-*

aggrieved individuals, which assertion we have accepted at least at this stage of the litigation. By

virtue of not being either in a professional or agency relationship with the aggrieved individuals,

Plaintiff may be nothing more than a third party to them, much like the anyone else. And in that

respect, any records, including medical records, shared with Plaintiff by the aggrieved individuals

**may** have shed their cloak of confidentiality. "It is well settled that disclosure of medical

information to a third party waives the physician-patient privilege, at least to the information

disclosed." *Carrion v. City of New York*, 2002 WL 523398, at *2 (S.D.N.Y. Apr. 8, 2002) (citations

omitted) (medical records shared with plaintiff attorney and the district attorney office). The only

possible saving grace for such a privilege is that it may be argued that the disclosure was shared

with someone who has a "common legal interest." *Strougo v. BEA Assocs.*, 199 F.R.D. 515, 520

(S.D.N.Y. 2001). However such a claim of "common legal interest" may be diluted by the

Plaintiff's continuous argument that the government and the private actor have "divergent or

different litigative interests." *See* Pl.'s Disc. Mem. of Law,  Ex. 1, Patrick Deval Esq., Mem. of

Law at pp. 2-4. Moreover, such medical conditions, even for those aggrieved individuals in which

Plaintiff may have to prove disability or handicap, may be waived in that they have been placed "at

issue." A privilege may also be impliedly waived or forfeited where a party makes assertions in the

litigation or "asserts a claim that in fairness requires examination of protected communications."

*Weizmann Institute of Science v. Neschis*, 2004 WL 540480, *3 (S.D.N.Y. Mar. 17, 2004) (citing

*United States v. Bilzerian,* 926 F.2d at 1285, 1292 (2d Cir. 1990) & *John Doe Co. v. United States,*

350 F.3d 299, 302 (2d Cir. 2003) (a party may forfeit its privilege because of "considerations of

fairness to the adversary")). The Court is uncertain whether Plaintiff intends on pursuing

compensatory damages on behalf of the aggrieved individual and, if so, whether the contours of

such damages will exceed the general concept of "garden variety" emotional distress. *Ruhlmann v. Ulster County*, 194 F.R.D. 445, 449 (N.D.N.Y. 2000) ("[A] party does not put his or her emotional condition in issue by merely seeking incidental, 'garden-variety,' emotional distress damages, without more."). For example, Plaintiff intends to recover damages for physical injuries to Gloria Minet. Mountain Ledge Defs.' Disc. Mem. of Law, Ex B at pp. 10 & 12. Physical injuries are outside the confine of "garden variety" emotional distress damages. If indeed Plaintiff has or will secure medical records from the aggrieved individuals with the intention of introducing those medical records at trial to establish a medical condition far greater than "garden variety" emotional distress damages, such may constitute a wavier of the privilege and may be subject to disclosure.[13]

### III. CONCLUSION

For the reasons stated therein, it is hereby

**ORDERED** that Plaintiffs Motion to Amend the First Amended Complaint (Dkt. No. 87) is **GRANTED** and it is further

**RECOMMENDED** that Defendants Mountain Ledge Development Corp., Mountain Ledge, L.P., Mountain Ledge, L.L.C., and Michael Dennis's Cross Motion to Sever (Dkt. No. 88) be **DENIED**; and it is further

**ORDERED** that Plaintiff shall file and serve its Second Amended Complaint on or before

---

[13] We also wish to note that Plaintiff incorrectly asserted that *Cauley v. Ingram Micro. Inc.*, 220 F.R.D. 26, 28 (W.D.N.Y. 2004) stood for the proposition that the disclosure of medical record should be subject to a confidentiality agreement. Pl.'s Disc. Mem. of Law at p. 10. *Cauley* did not even discuss this issue but rather discussed the imposition of sanctions for failure to compel with discovery orders. The only mentioned of medical records and a confidentiality agreement that can be found within the four corners of the decision is within the section designated as "Background." In this regard, the court noted that the first motion to compel was dismissed except as to disclosure of medical records, "which was granted if the parties entered into a confidentiality agreement." *Cauley v. Ingram Micro. Inc.*, 220 F.R.D. at 28. That observation alone does not stand as a pronouncement of any principle of law or even rise to the level of dictum.

January 23, 2006; and it is further

**ORDERED** that the Defendants' Answer to the Second Amended Complaint shall be filed and served within twenty days of the service of the Second Amended Complaint upon them; and it is further

**ORDERED**, to the extent Plaintiff has to make further disclosure to Defendants, said disclosure shall be made within thirty days of the Order; and it is further

**ORDERED** that to the extent that any of the named aggrieved persons have expressed that there were confidential communications between Plaintiff and themselves and that they wished to be represented by Plaintiff, Plaintiff must produce those individuals for deposition; and it is further

**ORDERED** that the stay previously imposed by this Court is lifted and that the Uniform Pre-trial Scheduling Order is amended as follows:

1)  Discovery deadline is extended to May 14, 2006;

2)  Motion filing date is extended to July 5, 2006;

3)  All other provisions of the Uniform Pre-trial Scheduling Order shall remain in effect; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R.

CIV. P. 72, 6(a), & 6(e).

**IT IS SO ORDERED.**

Date:   January 11, 2006
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge