UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**-v-**                                      **1:04-CV-714**

**BRUCE TANSKI, BRUCE TANSKI CONSTRUCTION
and DEVELOPMENT COMPANY, L.L.C., CLIFTON
COURT APARTMENTS, L.L.C., MOUNTAIN LEDGE,
L.P., MOUNTAIN LEDGE DEVELOPMENT CORP.,
MOUNTAIN LEDGE, L.L.C., MICHAEL DENNIS,
HOWARD F. JACOBSON, YATES SCOTT LANSING,
and MOUNTAIN LEDGE DEVELOPMENT CORP.,**

**Defendants.**

◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

APPEARANCES:

HON. GLENN T. SUDDABY
OFFICE OF THE UNITED STATES ATTORNEY
PAULA RYAN CONAN, Esq., Assistant United States Attorney
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261
and
UNITED STATES DEPARTMENT OF JUSTICE
CARL A. ANDERSON, Esq., Assistant United States Attorney
SEAN R. KEVENEY, Esq., Assistant United States Attorney
950 Pennsylvania Avenue NW
Washington, DC 20530
Attorneys for Plaintiff

DREYER BOYAJIAN LLP
APRIL M. WILSON, Esq., of Counsel
WILLIAM J. DREYER, Esq., of Counsel
LYNN A. HUTTER, Esq., of Counsel
75 Columbia Street
Albany, New York 12210
Attorneys for Defendants Bruce Tanski and Bruce Tanski Construction
and Development Company, L.L.C.

O'CONNELL & ARONOWITZ
NEIL H. RIVCHIN, Esq., of Counsel
54 State Street, 9th Floor
Albany, New York 12207
Attorneys for Defendants Mountain Ledge Development Corp.,
Mountain Ledge, L.P., Mountain Ledge, L.L.C., and Michael Dennis

TABNER, RYAN & KENIRY, LLP
BENJAMIN F. NEIDL, Esq., of Counsel
ERIC NOLAN DRATLER, Esq., of Counsel
WILLIAM J. KENIRY, Esq., of Counsel
18 Corporate Woods Boulevard
Albany, New York 12211
Attorney for Defendant Yates Scott Lansing

**Hon. Norman A. Mordue, Chief U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## INTRODUCTION

The United States brings this action to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("Fair Housing Act"), 42 U.S.C. § 3601, *et seq.* Presently before the Court are the following motions :

> (1) A motion by plaintiff United States of America (Dkt. No. 123) for partial summary judgment awarding it summary judgment as to liability against all defendants except Clifton Court Apartments, L.L.C.,[1] requiring them to submit a detailed remedial plan; and setting trial on compensatory and punitive damages;
>
> (2) A cross motion (Dkt. No. 138) by defendant Yates Scott Lansing for summary judgment dismissing all claims against him;
>
> (3) A cross motion by Mountain Ledge Development Corp., Mountain Ledge L.P., Mountain Ledge L.L.C., and Michael Dennis (Dkt. No. 142) to dismiss all claims against them;
>
> (4) A cross motion (Dkt. No. 140) by defendants Bruce Tanski and Bruce Tanski Construction and Development Company, L.L.C. to dismiss certain claims against them; and
>
> (5) A letter motion (Dkt. No. 149) by the United States to strike an exhibit to the Mountain Ledge defendants' motion papers and to compel the Mountain Ledge defendants to produce documents.

---

[1]
The United States and defendant Howard Jacobson entered into a settlement agreement which was "so ordered" by this Court on February 28, 2006 (Dkt. No. 135). The claims against Clifton Court Apartments, L.L.C. are not the subject of this motion. Thus, references throughout this Memorandum-Decision and Order to "defendants" refer only to the Mountain Ledge defendants, the Tanski defendants, and Lansing.

For the reasons set forth below, the United States' motion for partial summary judgment is granted in part and denied in part; the cross motions are denied; and the United States' letter motion is granted.

### SECOND AMENDED COMPLAINT

In the second amended complaint (Dkt. No. 122), the United States alleges that defendants failed to design and construct apartment units in compliance with the Fair Housing Act. There are seven apartment complexes in issue: the McGregor Village Apartments and six properties referred to herein as the "Tanski properties," *viz.*, Clifton Court North Apartments; Carol Jean Estates; Cranberry Estates; Andrea Court; Halfmoon Court; and Pine Ridge II Apartments. The United States also claims that defendants Mountain Ledge Development Corp., Mountain Ledge L.P., Mountain Ledge L.L.C., and Michael Dennis ("Mountain Ledge defendants") failed to give reasonable accommodation to a handicapped tenant, also in violation of the Fair Housing Act.

The second amended complaint alleges that the Mountain Ledge defendants own and operate McGregor Village Apartments. Michael Dennis is the sole shareholder, officer, and director of Mountain Ledge Development Corp.[2], which is the general partner in Mountain Ledge, L.P., a member of Mountain Ledge, L.L.C. The sole business of Mountain Ledge, L.L.C. is to own and operate the McGregor Village Apartments. Dennis participated in the design and construction of the McGregor Village Apartments and in its management.

Defendant Yates Scott Lansing ("Lansing") is an engineer. The second amended complaint alleges that he provided architectural or engineering services in connection with the design or construction of McGregor Village Apartments.

---

[2]

In his deposition, Michael Dennis referred to the general partner of Mountain Ledge, L.P. as McGregor Village Development Corp., and stated that he was its sole shareholder, officer and director.

Defendant Bruce Tanski built the Tanski properties in his individual capacity.  In April 1998 he formed defendant Bruce Tanski Construction and Development, L.L.C., of which he is sole officer and director.  Bruce Tanski Construction and Development, L.L.C. has engaged in the business of constructing single-family homes, townhouses, and the McGregor Village Apartments.  Defendants Bruce Tanski and Bruce Tanski Construction and Development, L.L.C. are referred to herein as the "Tanski defendants."

The United States alleges that the Mountain Ledge defendants, the Tanski defendants, and Lansing failed to design and construct 106 covered units in the McGregor Village Apartments in the Town of Wilton, New York, to be accessible to persons with disabilities.  The United States alleges that the Mountain Ledge and Tanski defendants committed these violations despite actual and repeated notice of the accessibility requirements of state and federal law.  The United States further claims that the Mountain Ledge defendants, despite actual knowledge that they had participated in designing and constructing inaccessible apartments, repeatedly refused to respond to the reasonable accommodation requests of Gloria Minet, a handicapped tenant at McGregor Village Apartments, to correct certain of those violations.

The United States also alleges that the Tanski defendants failed to design and construct 256 covered units at the Tanski properties to be accessible to persons with disabilities.

The second amended complaint sets forth three counts.  Count I states a claim under 42 U.S.C. § 3612(o).  Count II states a claim under 42 U.S.C. § 3614(a).[3]  Count III is not in issue in these motions.

*Count I – Section 3612(o) – Complaint of Housing Discrimination*

---

[3]

42 U.S.C. § 3612 is also known as Section 812 of the Fair Housing Act.  42 U.S.C. § 3614 is also known as Section 814 of the Fair Housing Act.  In this Memorandum-Decision and Order, the Court cites to the United States Code.

Count I of the second amended complaint states a claim under 42 U.S.C. § 3612(o), founded on a housing discrimination complaint filed with HUD on February 19, 2002, by Gloria Minet, an allegedly handicapped tenant at McGregor Village Apartments.[4]  Upon receiving her complaint, HUD investigated, determined that there was reasonable cause to believe that the defendants engaged in discriminatory housing practices, and, on April 28, 2004, issued a charge of discrimination pursuant to 42 U.S.C. § 3610(g)(2)(A).[5]  Instead of having the charge heard by an administrative law judge, defendants elected to have it decided in a civil action on behalf of Gloria Minet in United States district court, as permitted by 42 U.S.C. § 3612(a).  Accordingly, HUD terminated the administrative proceeding on Gloria Minet's complaint and authorized the United States Attorney General to commence a civil action pursuant to section 3612(o).

In Count I, based on Gloria Minet's HUD complaint, the United States claims that defendants failed to design or construct McGregor Village Apartments so that:

> (a) the public use and common use portions are readily accessible to and usable by individuals with disabilities;
>
> (b) all doors within the ground-floor units are sufficiently wide to allow passage by persons with disabilities who use wheelchairs; and
>
> (c) the ground-floor units contain the following features of adaptive design: (i) an accessible route into and through the dwelling; (ii) electrical outlets, thermostats

---

[4] Gloria Minet's complaint alleged that the builder failed to design and construct McGregor Village Apartments in an accessible manner, that the first floor apartments have two steps to enter them, that the walls are not reinforced for grab bars, that the thermostats are too high, the there is a 4" drop to the back deck, and that there are no lever handles on the doors at the entrances to the apartments.  Her complaint may also be read to allege that the Mountain Ledge defendants failed to make appropriate reasonable accommodations.

[5] HUD's charge found that McGregor Village Apartments contained units covered by the Fair Housing Act; that respondents violated the Fair Housing Act by discriminating against a handicapped person in the terms, conditions or privileges of rental of a dwelling; and that the McGregor Village Apartments complex was designed and constructed in such a manner that it violates 42 U.S.C. § 3604(f)(3)(C)(i),(ii), and (iii).

and other environmental controls in accessible locations; (iii) reinforcements in bathroom walls to allow later installation of grab bars; and (iv) usable kitchens and bathrooms such that an individual using a wheelchair can maneuver about the space.

Count I charges that, through the above conduct, defendants have discriminated on the basis of handicap in the rental of dwellings, in violation of 42 U.S.C. § 3604(f)(1); discriminated on the basis of handicap in the rental of a dwelling or in the provision of services or facilities in connection with a dwelling, in violation of 42 U.S.C. § 3604(f)(2); and failed to design or construct dwellings in compliance with the accessibility and adaptability features mandated by 42 U.S.C. § 3604(f)(3)(C). Count I alleges that the Tanski and Mountain Ledge defendants had notice, before the design or construction of McGregor Village Apartments was completed, that it was not designed or constructed in compliance with federal accessibility requirements.

Count I further alleges that the Mountain Ledge defendants discriminated on the basis of handicap by failing to make reasonable accommodations in their rules, policies, practices, and services, such as are necessary to afford the handicapped person equal opportunity to use and enjoy the dwelling, in violation of 42 U.S.C. § 3604(f)(1) and (f)(3)(B). This claim is not asserted against the Tanski defendants or Lansing.

Count I avers that Gloria Minet is an aggrieved person, as defined in 42 U.S.C. § 3602(i); that she has suffered damages as a result of the defendants' conduct; and that the defendants' discriminatory actions were intentional, willful, and taken in disregard of Gloria Minet's rights.

*Count II – Section 3614(a) - Pattern or Practice of Housing Discrimination*

Count II of the second amended complaint relies on section 3614(a),[6] which authorizes the

---

[6]
42 U.S.C. § 3614(a), "Pattern or practice cases," provides:
    Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted by this subchapter, or that any group of persons has been denied any of the rights granted by this subchapter and such denial raises an issue of general public

Attorney General to bring suit where he has reasonable cause to believe defendant (1) has engaged in a pattern or practice of discrimination; or (2) has denied rights to a group of persons, and the denial raises an issue of "general public importance."

During its investigation of Gloria Minet's complaint, HUD concluded that it had reason to believe that grounds existed for commencement of proceedings against defendants under section 3614(a).  In March 2004, in accordance with 42 U.S.C. § 3610(e)(2), HUD transmitted to the United States Attorney General the information upon which HUD based such belief.  On June 21, 2004, the United States brought this action.

Count II is founded on the United States' contention, based upon its investigations, that the ground-floor units at McGregor Village Apartments and the Tanski properties are subject to the design and construction requirements of 42 U.S.C. § 3604(f)(3)(C) and that they fail to comply therewith, resulting in the same Fair Housing Act violations as are charged in Count I.

The evidence, the United States contends, establishes a cause of action under section 3614(a) in two ways: first, it establishes that defendants engaged in a pattern or practice of resistance to the full enjoyment of rights under the Fair Housing Act, and second, it establishes that defendants' violations of the Fair Housing Act deny a group of people rights guaranteed under the Fair Housing Act and raises an issue of general public importance.

*Count III*

Count III alleges discrimination by Bruce Tanski and Clifton Court Apartments, L.L.C., on the basis of familial status.  Count III is not at issue in the motions presently before the Court.

*Relief Requested*

In connection with Counts I and II, the second amended complaint requests the following

---

importance, the Attorney General may commence a civil action in any appropriate United States district court.

relief: (1) an order declaring that the defendants' policies and practices violate the Fair Housing Act; (2) an order enjoining defendants from the following: failing or refusing to bring the covered units and public and common use areas at the subject complexes into compliance with 42 U.S.C. § 3604(f)(3)(C); failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of the defendants' unlawful practices to the position they would have been in but for the discriminatory conduct; designing or constructing covered multifamily dwellings in the future that do not contain the accessibility and adaptability features required by 42 U.S.C. §  3604(f)(3)(C); and failing or refusing to make reasonable accommodations as required by 42 U.S.C. § 3604(f)(3)(B); (3) an award of monetary damages, pursuant to 42 U.S.C. §§ 3612(o)(3), 3613(c)(1), and 3614(d)(1)(B), to all persons harmed by the defendants' discriminatory practices, including Gloria Minet; and (4) an assessment of a civil penalty against each defendant in an amount authorized by 42 U.S.C. § 3614(d)(1)(C), to vindicate the public interest.

## THE MOTIONS

**Generally**

### *The United States' Motion*

The United States contends that it has established as a matter of law that defendants discriminated against the handicapped by designing and constructing covered dwellings that do not have the accessibility features required by 42 U.S.C. § 3604(f)(3)(C).  It further contends that it has established a matter of law that the Mountain Ledge defendants discriminated against Gloria Minet by failing to make reasonable accommodations as required by 42 U.S.C. § 3604(f)(3)(B). The United States moves (Dkt. No. 123) for partial summary judgment awarding judgment as to liability against all defendants; requiring defendants to submit detailed remedial plans; and setting trial on compensatory and punitive damages.

*Lansing's Cross Motion*

Lansing cross-moves (Dkt. No. 138) for summary judgment dismissing all claims against him on the grounds that they are barred by statutes of limitations and that he did not participate in the design or construction of the McGregor Village Apartments within the meaning of 42 U.S.C. § 3604(f)(3)(C).

*The Mountain Ledge Defendants' Cross Motion*

The Mountain Ledge defendants cross-move (Dkt. No. 142) for summary judgment on the following grounds: that they did not design or construct the McGregor Village Apartments within the meaning of 42 U.S.C. § 3604(f)(3)(C); that there are questions of fact regarding whether McGregor Village Apartments fail to comply with that section; that the Mountain Ledge defendants made reasonable accommodations for allegedly handicapped tenants; that there is indisputable evidence that Gloria Minet is not handicapped; that there is no evidence to support a claim for civil penalties or punitive damages; and that claims by plaintiff and Gloria Minet for monetary damages are barred by the applicable statutes of limitations.

*The Tanski Defendants' Cross Motion*

The Tanski defendants cross-move (Dkt. No. 140) for partial summary judgment dismissing, on statute of limitations grounds, the United States' claims (a) on behalf of Gloria Minet; (b) for monetary damages behalf of aggrieved persons, and (c) for civil penalties.

*The United States' Letter Motion*

Finally, the United States moves by letter motion (Dkt. No. 149) (1) to strike Exhibit 19 to the Mountain Ledge defendants' cross-motion for summary judgment; and (2) to compel the Mountain Ledge defendants to disclose responses to questionnaires they sent to residents at McGregor Village Apartments.

**DISCUSSION**

**Generally**

The Court first addresses the United States' letter motion.  Then, in an effort to simplify the discussion, the Court addresses certain issues that arise in two or more motions.  These issues are: (1) statutes of limitations; (2) design and construction violations; and (3) handicapped status of Gloria Minet.  The Court then addresses the cross motions (and related issues in the United States' motion) as follows: (1) Lansing's cross motion; (2) Mountain Ledge defendants' cross motion; and (3) Tanski defendants' cross motion.  Finally, the Court sets forth its conclusions on liability and its rulings on the relief requested by the United States.

**United States' Letter Motion**

By letter motion (Dkt. No. 149) the United States seeks relief related to certain exhibits attached to the papers submitted by the Mountain Ledge defendants in opposition to the United States' motion and in support of the Mountain Ledge defendants' cross motion (Dkt. No. 142).  First, the United States seeks to strike Exhibit 19, a declaration from a private investigator and videotaped footage of Gloria Minet taken in March 2006.  The Court grants this request to the extent that Exhibit 19 will not be considered on this motion.  In itself, Exhibit 19 is not relevant to the question of whether Gloria Minet was handicapped within the meaning of the Fair Housing Act during the times in issue.  The Court does not now rule on its admissibility at trial.

The United States also seeks disclosure of all responses to a questionnaire sent by the Mountain Ledge Companies to residents at McGregor Village Apartments.  The responses received from five tenants – Christy Morey, Joanne Guljas, Wayne Brown, Linda Walowit, and Melissa Harrington – along with supporting declarations, are attached as Exhibits 6 through 10 to the Mountain Ledge defendants' papers.  In response to the United States' request for disclosure of any other tenants' responses to the questionnaire, the Mountain Ledge defendants simply asserted that they were "protected by the work-product privilege."

The Court holds that the United States is entitled to discovery of all tenants' responses to the questionnaire, not just those which the Mountain Ledge defendants choose to disclose.  By relying on some tenants' responses, the Mountain Ledge defendants have waived any right to protection with respect to any other tenants' responses.  It would be manifestly unfair to permit the Mountain Ledge defendants to adduce five tenants' responses (presumably the most favorable to the Mountain Ledge defendants) in support of their position and conceal whatever others they have received.  *See generally Trudeau v. New York State Consumer Protection Bd.*, 237 F.R.D. 325, 340 (N.D.N.Y. 2006).  And to the extent that the questionnaire itself (as distinguished from the tenants' responses) may be said to disclose the litigation strategy or legal theories of the Mountain Ledge defendants or their attorneys, any protection was waived when the content of the questionnaire itself was disclosed along with the five tenants' responses.  The Mountain Ledge defendants are not entitled to the protection of the work-product doctrine in this respect.

Thus, the letter motion (Dkt. No. 149) is granted, the Mountain Ledge defendants' Exhibit 19 to Dkt. No. 142 is stricken for purposes of these motions, and the Mountain Ledge defendants are directed to disclose all tenants' responses to the questionnaire in issue.

**Statute of Limitations Issues**

The motions before the Court raise a number of issues regarding statutes of limitations. Because these issues affect aspects of more than one motion, the Court now addresses the issues independently of any particular motion.  The issues are addressed in the following order:

> 1. The United States' claims for equitable relief;
>
> 2. The United States' claims for civil penalties relative to McGregor Village Apartments; and
>
> 3. The United States' claims for compensatory damages for aggrieved persons.

Section 3614(a) itself does not have a specific statute of limitations attached to it; accordingly, the

statute of limitations controlling actions under that section varies according to the requested

remedy. *See United States v. Hallmark Homes, Inc.*, 2003 WL 23219807, *3 (D.Idaho).


### Equitable Relief

The United States argues that no statute of limitations applies to its requests for equitable

relief in the form of declaratory and injunctive relief.  It is well established that, unless Congress

expressly provides otherwise, the United States is not bound by statutes of limitations.  *See*

*United States v. Incorporated Village of Island Park*, 791 F.Supp. 354, 364 (E.D.N.Y.1992)

(citing *Guaranty Trust Co. of N.Y. v. United States*, 304 U.S. 126, 132-33 (1938)).  Neither the

Fair Housing Act nor any other federal law imposes a statute of limitations on actions for

injunctive relief brought by the United States under section 3614(a); as a result, such actions are

not subject to any statute of limitations.  *See, e.g., United States v. Harrison*, 188 F.Supp.2d 77,

80 (D.Mass. 2002); *Island Park*, 791 F.Supp. at 365.  Thus, the United States' claims for

injunctive and declaratory relief under the Fair Housing Act are not time-barred.

### Civil Penalties for McGregor Village Apartments

The applicable statute of limitations for actions for civil penalties stemming from

violations of 42 U.S.C. § 3614(a) is found in 28 United States Code § 2462, "Time for

commencing proceedings," which provides:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for
> the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise,
> shall not be entertained unless commenced within five years from the date when
> the claim first accrued if, within the same period, the offender or the property is
> found within the United States in order that proper service may be made thereon.

*See Hallmark Homes*, 2003 WL 23219807 at *3.

The United States does not seek civil penalties with respect to the Tanski properties,

because the certificates of occupancy for those properties were issued more than five years prior

to commencement of this action on June 21, 2004.  Because section 2462 does not contemplate tolling or discovery accrual, claims for such civil penalties would be time-barred.  *See United States v. Taigen & Sons, Inc.*, 303 F.Supp.2d 1129, 1143-44 (D.Idaho 2003).

With respect to the allegedly noncompliant design or construction of McGregor Village Apartments, the United States argues that its claim for civil penalties is timely because brought within five years of the issuance of the certificate of occupancy on March 28, 2001.  The Court agrees.

Defendant Lansing points out that the claim against him is based only on his participation in the design of McGregor Village Apartments.  He contends that, inasmuch as the design was complete by August 1998 at the latest, the claim against him for civil penalties is time-barred because it was not brought within five years after August 1998.

The United States argues that, in cases based on the design and construction of covered dwellings under section 3604(f)(3)(C), the limitations period under section 2462 starts to run when the process of construction as a whole is complete as evidenced by a final certificate of occupancy.  The United States relies on case law holding that "[w]hen a group of entities enters into the design and construction of a covered dwelling, all participants in the process as a whole are bound to follow the FHAA."  *Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc*., 3 F.Supp.2d 661, 665 (D.Md. 1998) (emphasis in original); *accord United States v. Quality Built Constr., Inc.*, 309 F.Supp.2d 756, 761 (E.D.N.C. 2003).

The Court agrees with the United States that the section 2462 limitations period begins to run in design-and-construction cases upon the issuance of the final certificate of occupancy.  The Court finds no basis to hold that a claim for noncompliant design or construction under the Fair Housing Act accrues at different times against various participants in the design and construction process depending on when that participant's involvement ceased.  Thus, the claim for civil

penalties against Lansing is not time-barred.

*Compensatory damages*

The second amended complaint seeks an award of money damages pursuant to sections 3612(o) and 3614(a) to all persons harmed by the defendants' discriminatory practices, including Gloria Minet.  At issue is what statute of limitations applies to such claims.

1. Compensatory damage claims under section 3614(a)

The Court first addresses the limitations period applicable to compensatory damage claims under section 3614(a) (Count II of the second amended complaint).  The United States contends that such claims are governed by the three-year limitations period applicable to actions brought by the United States for money damages founded on a tort.  *See* 28 U.S.C. § 2415(b).  By its terms, section 2415(b) is subject to the provisions of section 2416, which excludes from the limitations periods "all periods during which ... facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances."  28 U.S.C. § 2416(c).

The United States argues that by operation of section 2416(c), the three-year limitations period within which to bring its section 3614(a) action began to run not on the date of issuance of the certificate of occupancy, March 28, 2001, but rather on the date when the Attorney General had knowledge of the alleged housing discrimination by defendants.  That date, according to the United States, is the date that HUD transmitted to the Attorney General the information upon which HUD based its belief that grounds existed for commencement of proceedings against defendants under section 3614(a), that is, the information upon which HUD based its belief that defendants were engaged in a pattern or practice of discrimination.  The Court agrees.

In reaching this conclusion, the Court notes that 42 U.S.C. § 3610(e)(2) requires that whenever, in the course of investigating a complaint filed by an aggrieved person, HUD "has

-14-

reason to believe that a basis may exist for the commencement of proceedings against any respondent" under section 3614(a), HUD "shall transmit the information upon which such belief is based to the Attorney General[.]"  The Court determines that, ordinarily, until the date that HUD transmits such information to the Attorney General, "facts material to the right of action are not known and reasonably could not be known" by the Attorney General, the official "charged with the responsibility to act in the circumstances."  28 U.S.C. § 2416(c).  *See Taigen*, 303 F.Supp.2d at 1146.  Defendants adduce no evidence that in this case the Attorney General knew or should have known such facts at an earlier date.  In the case at bar, HUD transmitted such information to the Attorney General in March 2004, and the Attorney General brought this action less than three years later.  Thus, the section 3614(a) claims are timely.

Defendants argue that so much of the 3614(a) claim as seeks compensatory damages on behalf of aggrieved persons is time-barred by the two-year limitations period of 42 U.S.C. § 3613(a)(1)(A).  *See, e.g., Moseke v. Miller and Smith, Inc.*, 202 F.Supp.2d 492, 507-10 (E.D.Va. 2002).  Section 3613(a)(1)(A) provides: "An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice ... to obtain appropriate relief with respect to such discriminatory housing practice or breach."  Defendants argue that this two-year limitations period should also apply to claims brought by the United States under section 3614(a) for an award of compensatory damages to an aggrieved person.

The Court rejects this argument.  It is clear from the plain language of section 3613(a)(1)(A) that it governs only lawsuits commenced by aggrieved persons.  It does not govern a section 3614(a) claim, such as that set forth in Count II.  The Attorney General's claim under section 3614(a) is not simply an alternative method of asserting a section 3613(a)(1)(A) claim that a particular aggrieved person has been the victim of a discriminatory housing practice.

Rather, a section 3614(a) claim differs fundamentally from such a claim.  A section 3614(a) claim

requires reasonable cause to believe that a defendant has engaged in a pattern or practice of

discrimination and/or has denied a group of persons their rights in connection with an issue of

public importance, and it permits the Attorney General to assess a civil penalty "to vindicate the

public interest."  42 U.S.C. § 3614(d)(1)(C).  As such, it is fully consistent with the statutory

scheme of the Fair Housing Act to allow the Attorney General to recover compensatory damages

on behalf of a victim of such conduct, even where the victim is time-barred from recovering

compensatory damages based solely on his or her individual complaint.

### 2. Compensatory damage claims under section 3612(o)

With respect to compensatory damage claims under section 3612(o) (Count I of the

second amended complaint), the Court notes that the statute requires the United States to

commence and maintain a civil action on behalf of the aggrieved person within 30 days after the

defendants elect to have the HUD charge heard in district court.  *See* 42 U.S.C. § 3612(a),(o)(1).

It is undisputed that the United States complied with this section.  The Mountain Ledge

defendants argue, however, that the United States' section 3612(o) claim for compensatory

damages on behalf of Gloria Minet is untimely because Gloria Minet's own claim for

compensatory damages was already time-barred when she made her complaint to HUD on

February 19, 2002.  They base this argument on the fact that Gloria Minet moved into a

completed building at McGregor Village Apartments on August 1, 1999.  Thus, they contend, any

recovery on her behalf is barred by the one-year limitations period in 42 U.S.C. §

3610(a)(1)(A)(i), which provides in part that "[a]n aggrieved person may, not later than one year

after an alleged discriminatory housing practice has occurred or terminated, file a complaint with

the Secretary alleging such discriminatory housing practice."

In addressing this argument, the Court notes that the United States asserts two types of

claims under section 3612(o): those based on lack of accessibility in the design and construction of McGregor Village Apartments, in violation of section 3604(f)(3)(C), and those based on the failure of McGregor Village Apartments to provide reasonable accommodation in response to Gloria Minet's requests, in violation of section 3604(f)(3)(B).  First, with respect to the design and construction claims, this Court has already found that the section 3614(a) compensatory damages claims on behalf of Gloria Minet based on violations of section 3604(f)(3)(C) are timely.  Thus, it is not necessary to determine whether the claims on her behalf under section 3612(o) for the same damages based on the same violations of the same section are timely.

Second, with respect to the section 3612(o) claims based on the alleged failure to provide reasonable accommodation in response to Gloria Minet's requests, in violation of section 3604(f)(3)(B), the United States argues that they are timely because she filed her complaint with HUD within one year of the occurrence of the alleged discriminatory practices.  Specifically, Gloria Minet's declaration states that on May 31, 2001, she requested that Mountain Ledge replace the ramp at her apartment; that in January 2002 she again requested that the ramp be replaced or repaired, and that the Mountain Ledge defendants did not respond to either request.  A refusal to modify a unit in a timely manner upon a reasonable request constitutes a refusal to make reasonable accommodations in violation of the Fair Housing Act.  Gloria Minet's HUD complaint, filed on February 19, 2002, was filed within a year of the alleged denials of her requests made on May 31, 2001 and February 19, 2002.  Thus, it is timely in this regard.

The Court also rejects Lansing's contention that Count I of the second amended complaint, stemming from Gloria Minet's complaint filed with HUD, is time-barred by the eighteen-month limitations period of 42 U.S.C. § 3614(b)(1)(B).  Lansing's reliance on section 3614(b)(1)(B) is misplaced; that subdivision applies where HUD refers a matter to the Attorney General under 42 U.S.C. § 3610(g).  HUD did not refer the charge stemming from Gloria Minet's

complaint to the Attorney General under section 3610(g).  Rather, after HUD determined that reasonable cause existed and issued a charge of discrimination under 42 U.S.C. § 3610(g)(2)(A), the Mountain Ledge defendants elected to have the charge resolved in a civil action pursuant to 42 U.S.C. § 3612(a) instead of proceeding before an administrative law judge.

### *Statutes of Limitations - Conclusion*

Accordingly, the United States' claims in Counts I and II are not time-barred.  The Court denies those parts of the cross motions by Lansing (Dkt. No. 138), the Mountain Ledge defendants (Dkt. No. 142), and the Tanski defendants (Dkt. No. 140) as seek dismissal of claims on limitations grounds.

**Discriminatory design and construction**

### *Generally*

Both Count I and Count II of the complaint rely primarily on the claim that defendants discriminated in the rental of housing due to their failure to design and construct the dwellings in compliance with the accessibility requirements of section 3604(f)(3)(C) of the Fair Housing Act.[7] Under the Fair Housing Act, design and construction discrimination is defined as:

> in connection with the design and construction of covered multifamily dwellings ..., a failure to design and construct those dwellings in such a manner that –
> > (i) the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;
> > (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and
> > (iii) all premises within such dwellings contain the following features of adaptive design:
> > > (I) an accessible route into and through the dwelling;
> > > (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;
> > > (III) reinforcements in bathroom walls to allow later installation of

---

[7] The other claim in Count I, that the Mountain Ledge defendants failed to make reasonable accommodations for Gloria Minet, is discussed separately, *infra*.

grab bars; and
(IV) usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

42 U.S.C. § 3604(f)(3)(C).  Section 3604(f)(4) provides: "Compliance with the appropriate

requirements of the American National Standard for buildings and facilities providing

accessibility and usability for physically handicapped people (commonly cited as 'ANSI A117.1')

suffices to satisfy the requirements of paragraph (3)(C)(iii)."

The United States' request for summary judgment on the issue of liability for design-and-

construction discrimination under section 3604(f)(3)(C) is based on the failure of the defendants

to comply with HUD Guidelines, *see* 56 Fed. Reg. 9472-01, the American National Standards

Institute ("ANSI") standards, or any comparable standard.[8]  Courts have held that summary

judgment on the issue of design-and-construction discrimination is appropriate where plaintiff

demonstrates that a covered dwelling does not comply with the ANSI standards or the HUD

Guidelines, and defendants fail to submit evidence that the property complies with any other

accessibility standard.  *See Taigen*, 303 F.Supp.2d at 1154; *Quality Built*, 309 F.Supp.2d at 763.

### *McGregor Village Apartments*

The United States' Statement of Material Facts sets forth in detail the allegedly

inaccessible features of the McGregor Village Apartments, all of which are supported by the

record evidence.  Many of the factual assertions are based on the comprehensive submission of

William Hecker, AIA, a registered architect with expertise in the field of accessibility for people

with disabilities.  The following factual assertions in the United States' Statement of Material

Facts are admitted by the Mountain Ledge defendants:

---

[8]

The parties agree that the HUD Guidelines "describe minimum standards of compliance with the specific accessibility requirements of the [Fair Housing] Act,"  56 Fed. Reg. 9472-01, *9476, and are not mandatory.

The route from the sidewalk serving each ground-floor unit at buildings 1 through 27 of the McGregor Village Apartments into the front entrance of each of the ground-floor units includes at least one stair.

The route from the inside of each of the ground-floor units at buildings 1 through 27 of the McGregor Village Apartments onto the rear deck of each ground-floor unit involves a change in level of greater than one-half of an inch.

Michael Dennis admitted that persons in wheelchairs cannot access the ground-floor apartments at McGregor Village as they were originally built [that is, without being modified by the installation of a ramp at their front doors].

There is no accessible route from the sidewalk at the entrance to the McGregor Village Apartments to any of the ground-floor unit entrances.

The routes from the parking spaces serving the ground-floor units at McGregor Village to the ground-floor units have cross slopes in excess of 2% and running slopes in excess of 5%.

The wooden ramps installed at some of the ground-floor units at McGregor Village have running slopes in excess of 8.33%.

The electrical outlets in the ground-floor units at the McGregor Village Apartments are installed at a height of less than 15 inches from the floor.

The Department of State of the State of New York determined on November 22, 2002, that the doors to the bathrooms and bedrooms of the ground-floor units at McGregor Village do not provide a clear opening of 32 inches, and that the ground-floor units at McGregor Village do not all provide a minimum of 48-inches of clearance in front of the water closet in the bathrooms of those units.

The doors leading to the rear patios at McGregor Village allow only 26 and 3/4 inches of clear passage.

The inside threshold of the entrance doors to the ground-floor units at McGregor Village  contains an abrupt change in level of 1 and 1/4 inches. The threshold at the sliding glass doors to the patios at McGregor Village contains an abrupt change in level of 5 inches.

There is not a 30 by 48 inch clear-floor space centered on the ranges in the kitchens of the ground-floor units at McGregor Village.

(Citations to record omitted.)

        The Mountain Ledge defendants deny the remaining factual assertions.  In the following

paragraphs, the Court briefly summarizes the United States' assertions and the Mountain Ledge

defendants' denials.

First, the United States asserts, based on Hecker's report, that the wooden ramps at the McGregor Village Apartments contain abrupt, and unbeveled changes in level greater than 1/4 inch.  Hecker specifically states that the approach ramps of five McGregor Village Apartments units, including Unit 25f, Gloria Minet's unit, had a "lip" of 1/2 inch or more.  In support of their denial of this factual assertion, the Mountain Ledge defendants rely on the deposition testimony and declaration of McGregor Village's apartment manager, Anton Fowler, that whenever Gloria Minet complained about her ramp, he and/or Joseph Aschauer, who built this and other ramps at the McGregor Village Apartments, would check it, and that it was "fine"and "in fantastic shape." The also rely on a photograph of the ramp and on declarations from five residents at McGregor Village Apartments who either are handicapped themselves or reside with someone who is, to the effect that the ramps pose no difficulty.

In denying the United States' assertion, based on Hecker's submission, that the ground-floor unit entrance doors at McGregor Village have round doorknobs, the Mountain Ledge defendants assert only that Gloria Minet's front door has a lever door handle.

In response to Hecker's detailed measurements and conclusions regarding the inaccessible features of the mailbox areas, the Mountain Ledge defendants rely only on the declarations of the five tenants that they have no difficulty getting their mail and the declaration of Dean Kolligian, the rental manager since January 2004, that on many occasions he has seen Gloria Minet getting her own mail.

The Mountain Ledge defendants deny the United States' assertion, based on Hecker's report, that the "accessible parking" at the ground-floor units at McGregor Village does not conform to the requirements set forth in the HUD Guidelines for handicapped-accessible parking. They support their denial by pointing out that the HUD Guidelines permit the use of any design

that obtains a result consistent with the Fair Housing Act's requirements.  They do not, however, cite to evidence that the parking at the McGregor Village Apartments obtains such a result.

The United States relies on the Mountain Ledge defendants' admission that the ground-floor units at the McGregor Village Apartments do not have reinforcements in the bathroom walls to allow for the later installation of grab bars.  In support of their denial, the Mountain Ledge defendants point to the statement of Bruce Tanski in response to the United States' Notice to Admit that he cannot admit or deny that the covered units do not have such reinforcements and that "[u]pon investigation into this matter, it appears that most of the units do have reinforcements but this cannot be stated with certainty as to all of the units."  The Mountain Ledge defendants also refer to the deposition testimony of Joseph Aschauer, who was employed by Bruce Tanski as the construction supervisor at McGregor Village Apartments.  Aschauer testified that he recalled installing one or more grab bars after the units were completed and that he had to remove "siding" because they had to "put some blocks behind it" in order to install the grab bar.

Hecker's report states that the thermostat controls at McGregor Village are mounted 56 inches above the floor.  The Mountain Ledge defendants rely on the deposition testimony of Michael Dennis that at some unspecified time they lowered all the thermostats and the declarations of the five tenants that they have no difficulty reaching the thermostats.

Hecker's report further states that the toilet in the ground-floor units at McGregor Village is located closer than 18 inches to the adjacent bathtub, and that there is not a 30 by 48 inch clear-floor space centered on the lavatory in the bathrooms of the McGregor Village Apartments. In support of their denial, the Mountain Ledge defendants rely on the declaration of Dean Kolligian, the rental manager, that 36 of the 106 units covered by the Fair Housing Act requirements were redesigned and are wheelchair accessible.

The Court finds that the facts asserted by the United States are supported by record evidence.  The Mountain Ledge defendants' submissions do not raise a material question of fact on any of these issues, other than with respect to the bathrooms in 36 of the 106 covered units.

William Hecker has prepared a detailed report based on the above facts.  He concludes that the units do not comply with section 3604(f)(3)(C) because (1) they were not designed and constructed in such a manner that the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons; (2) they were not designed and constructed in such a manner that the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and (3) they were not designed and constructed in such a manner that all premises within such dwellings contain the following features of adaptive design: a) an accessible route into and through the dwelling; b) thermostats and electrical outlets in accessible locations; c) reinforcements in bathroom walls to allow later installation of grab bars; and c) usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.  He explains in detail the measurements and observations supporting each of these conclusions, cites to the pertinent HUD Guidelines and ANSI standards, and sets forth the specific manner in which the various features of the units violate the guidelines and standards.

The Mountain Ledge defendants do not dispute the accuracy of the United States' measurements or observations, nor do they contend that the apartments comply with HUD Guidelines, ANSI standards, or any other objective accessibility standards.  Rather, they rely on declarations from five residents at McGregor Village Apartments who either are handicapped themselves or reside with someone who is, to the effect that the apartments present no difficulty to the handicapped in using the dumpsters, mailboxes, ramps, sidewalks, thermostats, light switches, etc., and no difficulty maneuvering through the doorways or in the bathrooms or

kitchens.  Likewise, the Tanski defendants rely on a declaration from a McGregor Village Apartments resident.  They do not dispute the accuracy of the measurements or observations, nor do they contend that the McGregor Village Apartments comply with any objective accessibility standards.       The Court agrees with the United States that these wholly subjective declarations are not probative on the question of whether the apartments are designed and constructed such that they comply with the requirements of section 3604(f)(3)(C).  No reasonable reading of the section supports the view that the Fair Housing Act's requirements may be met by satisfying the accessibility needs of a particular handicapped individual.  Rather, a plain reading of section 3604(f)(3)(C) demonstrates that it requires compliance with an objective accessibility standard broadly applicable to handicapped people.  The section requires that covered dwellings be "designed and constructed" such that the public use and common use areas be "readily accessible to and usable by handicapped persons"; that all doors be sufficiently wide "to allow passage by handicapped persons in wheelchairs"; and all premises in the dwelling contain specified "features of adaptive design" such as "accessible" routes into and through the dwellings, environmental controls in "accessible locations," and "usable" kitchens and bathrooms.  The Court's reading of the statute as requiring compliance with a broadly applicable objective accessibility standard is reinforced by the provision in section 3604(f)(4) that the requirements of section 3604(f)(3)(C)(iii) may be satisfied by compliance with the appropriate ANSI requirements.

       The Court's reading of section 3604(f)(3)(C) is further reinforced by HUD's implementing regulations.  In establishing guidelines "to provide builders and developers with technical guidance on how to comply with the specific accessibility requirements of the Fair Housing Act," 56 Fed. Reg. 9472-01, *9472, HUD solicited and considered comments by "several national, State and local organizations and agencies, private firms, and individuals that have been involved in the development of State and local accessibility codes," as well as "a

number of disability organizations."  *See id.* at *9475.  After detailed discussion, HUD adopted a

proposal, referred to as "Option One," which provided accessibility guidelines developed by

HUD with the assistance of the Southern Building Code Congress International (SBCCI).  *See id.*,

at *9474.  And HUD rejected a proposal, referred to as "Option Three," which would allow the

Fair Housing Act requirements to be satisfied by design adaptations made "only to those units

which actually would be occupied by a disabled resident, and ... tailored to the specific

accessibility needs of the individual tenant."  *Id.* at *9474; *see Montana Fair Housing, Inc. v.*

*American Capital Dev't, Inc.*, 81 F.Supp.2d 1057, 1065 (D.Mont. 1999) (agreeing with the

plaintiffs that the term "adaptive design" in section 3604(f)(3)(C)(iii) means "design appropriate

for use by persons of all abilities without modification.").

 Neither the Fair Housing Act nor the HUD Guidelines support the view that compliance

may properly be evaluated by considering whether a particular dwelling meets the needs of a

particular handicapped tenant.  Thus, the anecdotal experiences of individual handicapped people

residing in McGregor Village Apartments do not raise a material question of fact regarding

whether the apartments were designed and constructed in compliance with the Fair Housing Act.[9]

Moreover, none of the declarants has any expertise relevant to whether the dwellings comply with

objective accessibility requirements recognized by an individual or organization with expertise in

the field, and their submissions cannot amount to an alternative way of demonstrating compliance

---

[9]

The Court is aware that the district court in *United States v. Pacific Northwest Elec., Inc.*, 2003 WL 24573548, *12-14 (D.Idaho) held that affidavits from handicapped individuals raised questions of fact on the issue of whether certain aspects of certain covered dwellings were accessible.  It appears that the only evidence in that case on the question of inaccessibility – in addition to the affidavits of the handicapped people – was the failure of the dwellings to comply with HUD guidelines.  In contrast, here, the United States submits the detailed declaration of William Hecker, establishing that the McGregor Village Apartments do not comply with HUD guidelines, ANSI standards, or any other recognized accessibility standards.  The tenants' declarations here are insufficient to raise a question of fact in the face of Hecker's declaration.

with the requirements of the Fair Housing Act.  The defendants fail to raise a material question of

fact on the issue.  The United States has established as a matter of law that the McGregor Village

Apartments complex has the above-listed features and that such features violate section

3604(f)(3)(C).

   *The Tanski properties*

   It is undisputed that the Tanski properties – *i.e.*, Andrea Court, Carol Jean Estates, Clifton

Park North, Cranberry Estates, Halfmoon Court, and Pine Ridge II – all contain units that are

covered by the Fair Housing Act.  The United States' Statement of Material Facts sets forth in

detail the allegedly inaccessible features of the covered units covered by the Fair Housing Act.

All of the United States' factual assertions in this respect are based on the report of William

Hecker.  These are as follows:

> The route from the sidewalk serving each ground-floor unit ... into the front
> entrance of each of the ground-floor units includes at least one stair.
>
> The accessible parking spaces ... do not conform to the requirements set forth in
> the HUD Guidelines for handicapped-accessible parking, such as compliant signs
> or access aisles.
>
> There is no accessible route from the entrance ... [of the properties] to any of the
> ground-floor unit entrances.
>
> The ground-floor unit entrance doors ... have round doorknobs.
>
> The routes from the parking spaces serving the ground-floor units ... to the
> ground-floor unit entrances have cross slopes in excess of 2% and running slopes
> in excess of 5%.
>
> The wooden ramps installed at some of the ground-floor units ... do not comply
> with the HUD Guidelines.
>
> [The bedroom and bathroom doors, and in some properties, the closet or patio
> doors as well] ... allow less than 32 inches of clear passage.
>
> The inside threshold of the entrance doors to the ground-floor units ... contains an
> abrupt change in level of [3/4 inch or more].

> There is not a 30 by 48 inch clear-floor space centered on the ranges in the kitchens of the ground-floor units[.]
>
> The toilet in the ground-floor units ... is located closer than 18 inches to the adjacent tub.
>
> There is not a 30 by 48 inch clear-floor space centered on the lavatory in the bathrooms[.]
>
> There is insufficient maneuvering space in the bathrooms ... to allow a wheelchair user to enter the bathroom and close the door.

(Citations to record omitted.)  All of these factual assertions pertain to all six of the Tanski properties.  Also, with respect to Carol Jean Estates, the United States' Statement of Material Facts states that the thermostats are mounted at 56 inches above the floor.  And the United States alleges that at Halfmoon Court, the threshold at the sliding glass doors to the patios contains an abrupt change in level of 1 inch.

The Tanski defendants' response to the above assertions in the United States' Statement of Material Facts merely states that they "[n]either admit or deny the allegations of plaintiff's expert report, and reserve all rights to further discovery."  Neither in their cross motion nor in their papers in opposition to the United States' motion for partial summary judgment, do the Tanski defendants raise any factual challenge to these assertions.  Nor do they seek further discovery on this issue.  Accordingly, the Court deems these facts to be undisputed.

As it did with respect to the McGregor Village Apartments, Hecker's report concludes that the units do not comply with section 3604(f)(3)(C).  The report explains in detail the measurements and observations supporting each of these conclusions and further sets forth the specific manner in which the various features of the units violate the HUD Guidelines and the ANSI standards.

The Tanski defendants do not dispute the accuracy of the United States' measurements or observations, nor do they contend that the apartments comply with HUD Guidelines, ANSI

standards, or any other objective accessibility standards.  Rather, they rely on the subjective

declarations of individuals, similar to those submitted by the Mountain Ledge defendants.  As

discussed above, the Court finds that such declarations do not raise a question of fact regarding

whether the apartments were designed and constructed in compliance with the requirements of

section 3604(f)(3)(C).  The United States has established as a matter of law that the Tanski

properties have the above-listed features and that such features violate section 3604(f)(3)(C).

**Issues Concerning Handicapped Status of Gloria Minet; Failure to Accommodate**

The United States requests partial summary judgment on liability against the Mountain

Ledge defendants on the ground of failure to accommodate Gloria Minet.  The Mountain Ledge

defendants request dismissal of the United States' claims on behalf of Gloria Minet.

Relying on Gloria Minet's declaration, the United States urges that, as a matter of law, she

is a person with a handicap within the meaning of the Fair Housing Act.  In her declaration,

Gloria Minet states:

> I suffer from polio, post-polio syndrome, heart disease, and microvalve prolapse.
> At the time that I moved into McGregor Village in August 1999, I had limited
> mobility.  I could only walk a short distance, and in any event could do so only
> while suffering significant pain; I could also only navigate a few steps, also with
> significant pain.  In the fall of 2004, my left leg was amputated below the knee as a
> result of complications from the ailments described above.

She adds: "For the past ten years, I have relied periodically on mobility aids, including a cane and

a wheelchair."

In opposition, and in support of their cross motion, the Mountain Ledge defendants rely on

the declaration of Anton Fowler, apartment manager for McGregor Village Apartments from

August 1998 to April 2002, stating that he had seen Gloria Minet on many occasions since she

first inquired about renting an apartment in spring 1999; that she drove herself in her car; that

(except after she had surgery in fall 2005) she never used a wheelchair or other "mobility

-28-

assistive device"; that she did not appear to have difficulty moving about; and that she picks up her mail, takes her trash to the dumpster, and walks her monthly rent check to the rental office. They also submit the declaration of Dean Kolligian, rental manager at McGregor Village Apartments since January 2004, to similar effect.[10]

The Fair Housing Act, 42 U.S.C. § 3602(h), provides:

> "Handicap" means, with respect to a person –
> (1) a physical or mental impairment which substantially limits one or more of such person's major life activities,
> (2) a record of having such an impairment, or
> (3) being regarded as having such an impairment[.]

The Court has already noted that the United States can pursue all the relief it seeks on behalf of Gloria Minet for design-and-construction violations in the context of the 3614(a) claim in Count II. Therefore, it is not necessary for the Court to determine at this point in the litigation whether the record evidence establishes that Gloria Minet was "handicapped" within the meaning of 42 U.S.C. § 3602(h) so as to support the design-and-construction claims in Count I. More detailed evidence will be required at trial regarding whether, when, and to what extent Gloria Minet was handicapped at the various times in question; this evidence will be needed to address the merits of the section 3612(o) claim in Count I based on the Mountain Ledge defendants' alleged failure to make reasonable accommodations for her as required by 3604(f)(3)(B) and damages on that claim, as well as damages under Count II. Thus, the issues concerning Gloria Minet's handicapped status cannot properly be determined on this record.

The United States' motion insofar as it seeks summary judgment on liability against the Mountain Ledge defendants on the ground of failure to accommodate Gloria Minet is denied. The Mountain Ledge defendants' request for dismissal of the United States' claims on behalf of

---

[10]
As discussed above, the Court strikes the Mountain Ledge defendants' Exhibit 19 to Dkt. No. 142 for purposes of these motions.

Gloria Minet is denied.

**Defendants' cross motions; issues concerning particular defendants**

<u>*Yates Scott Lansing*</u>

Lansing cross-moves (Dkt. No. 138) for dismissal of the claims against him on the ground that he did not design or construct the McGregor Village Apartments within the meaning of 42 U.S.C. § 3604(f)(3)(C).  The United States takes the position that Lansing participated in the design of the McGregor Village Apartments complex because he prepared the building plans used to construct them.  The United States relies on evidence that, after Bruce Tanski was hired to construct McGregor Village Apartments, he approached Lansing, gave him an old set of hand-drawn building plans, and asked him to place them into a computer-aided design ("CAD") format for use as building plans for McGregor Village Apartments.  Lansing, an engineer by training but not yet licensed as a professional engineer in New York State, prepared the draft building plans using CAD software.  Lansing then took the plans to Jacobson, a licensed professional engineer.  Jacobson reviewed, analyzed and approved the plans, and certified them by affixing his engineer's stamp thereon.  Subsequently, at Bruce Tanski's request, Lansing modified the bathroom portion of the computer-generated plans using CAD.  Again, Jacobson stamped Lansing's work.  The United States argues that this is sufficient to resist dismissal of the claims against Lansing, pointing to case law stating that the "design and construction" language of the Fair Housing Act is to be read broadly, and that all participants in the design and construction process "as a whole" are subject to the requirements of the Act.  *See Taigen*, 303 F.Supp.2d at 1149; *Baltimore Neighborhoods (Rommel Buiders)*, 3 F.Supp.2d at 665 (stating that to hold otherwise "would defeat the purpose of the FHAA to create available housing for handicapped individuals and  allow wrongful participants in the design and construction process to remain unaccountable").

In support of his cross motion, Lansing submits an affidavit stating: "When I was a student engineer-in-training, I briefly provided some ministerial services as a go-between as between the project's builder, defendant Bruce Tanski, and its engineer, defendant Howard Jacobson."  He states that Bruce Tanski "approached [him] in 1997 with his set of hand-drawn building plans, and said that he wanted them copied into a cleaner, printed format."  Bruce Tanski asked Lansing to copy the drawings because he knew that Lansing had access to CAD software.  Lansing states that he did not know that the plans were to be used for McGregor Village Apartments; in fact, he says, "Tanski did not tell [him] that he was actually planning to build anything with the drawings."  Lansing argues that he did not develop the plans but rather served briefly in the nature of a scrivener by copying into a digital format the plans given to him by Bruce Tanski and by making specific modifications as directed by Bruce Tanski.

With respect to the modifications to the bathrooms, Lansing's affidavit states that Tanski contacted him and told him that "he had submitted the CAD drawings stamped by Howard Jacobson to the Town of Wilton to obtain building approvals, and the Town had requested that some specific additions be added to the plans concerning the bathrooms." Lansing states:

> At Tanski's request, I took the specific additions that Tanski related to me (which were given to him by the Town of Wilton), used the CAD software to show them on an enlarged, blown-up portion of the CAD that I had previously copied for Tanski. The additions to the CAD blow-up were not of my own design or creation. I simply made markings and notations on the CAD blow-up that were dictated to me by Tanski, and which were to be subject to review and approval by a qualified, licensed professional engineer[.]"

Jacobson reviewed, approved, and certified the modifications.

Lansing also relies on Bruce Tanski's sworn statement confirming that Lansing merely copied the drawings.  Lansing also points to Jacobson's admissions that Jacobson, not Lansing, conducted the engineering review of the designs, and that only Jacobson and the Town of Wilton had the ability and authority to modify the designs.

-31-

In reviewing Jacobson's deposition, the Court notes the following testimony: that Jacobson was "mentoring" Lansing so that he could get the experience needed to get his professional engineering license; that at some point Lansing brought Jacobson the plans to look at; that Lansing had "probably" mentioned the project to Jacobson before bringing him the plans; that they reviewed the plans for an hour or two; that during his review, Jacobson was "looking for" the "constructability and the structural adequacy and the construction notes that [Lansing] had prepared"; that Jacobson does not remember whether he put his engineer's stamp on the plans on the same day; that Lansing probably paid Jacobson for his work in connection with the McGregor Village Apartments project; that Lansing "was paying [Jacobson] for the other jobs that he was working on, and when [Jacobson] would certify them, [Lansing] would pay [Jacobson] a fee."

Jacobson was also questioned with respect to the addendum prepared by Lansing to modify the bathroom plans. He does not recall reviewing them, but acknowledged that he had stamped them. Jacobson stated that when he stamped the plans, he had never met Bruce Tanski and had never heard of the Fair Housing Act.

At his deposition, Lansing testified that he had previously known Bruce Tanski "through the construction industry"; that in 1995 Bruce Tanski came to him and "indicated that he had a set of plans for a multifamily residence that were hand-drawn and he wished to have those converted to an electronic CAD format"; that Bruce Tanski paid him $20 per hour for "drafting" the plans; that it took 25 or 30 hours; that Lansing told Bruce Tanski that he "had an acquaintance who was a professional engineer, that [he] would contact that person to review and stamp the plans for him"; that he was referring to Jacobson; that Bruce Tanski told him to go ahead; and that Lansing paid Jacobson $250 for his services in connection with the plans.

With respect to the modifications to the plans, Lansing testified that he made changes to

the floor plan and window schedule as directed by Bruce Tanski.  The changes were reflected in

Lansing's July 7, 1998 letter to Bruce Tanski advising him that he had made certain drawing

modifications, including replacing the previously proposed interior doors with 36-inch wood

doors, moving one wall to increase the size of the bathroom, and rearranging the bathroom

fixtures to provide additional room and allow for the larger door opening swing.  Lansing did not

recall whether Bruce Tanski gave him the dimensions that were included in the door and window

schedule.  For example, he did not recall whether Bruce Tanski told him to change the door

widths of the bathrooms or whether he told him to change the door widths specifically to make

them 36-inch doors.

     Bruce Tanski testified in his deposition that Lansing had drawn plans for him in the past,

prior to the McGregor Village Apartments plans; that he first met Lansing "[a]s an engineer"; that

he "assume[s]" he gave Lansing an old set of the plans ultimately used for McGregor Village

Apartments "so that he could draw a new set so I could get a permit."  Bruce Tanski added:

"Basically, he copied the set that I gave him so that I could get a permit, because probably, the

existing engineer's stamp was too old for the town to accept."  He assumed that Lansing made no

changes to the initial plans.  With respect to the modifications, he testified: "I went to Scott

[Lansing] and asked him if he could find somebody to redesign the bathrooms for the Town of

Wilton."  At another point, Bruce Tanski stated that he went to Lansing to get the plan

"readjusted."

     Based on these and other aspects of the record, the Court finds that Lansing has not

demonstrated that his role was that of a mere scrivener as opposed to that of an engineer.  Bruce

Tanski paid Lansing for his services, which included more than simply placing the plans in a

CAD format; Lansing also obtained the certification of the plans by Jacobson, a certified

professional engineer.  Jacobson certified the plans in the context of his position as mentor to

Lansing.  In certifying the plans, Jacobson presumably relied in part on Lansing's qualifications as an engineer; there is no reason to believe he would have been equally willing to certify plans prepared by a layperson.  Lansing spent 25-30 hours on the plans; Jacobson spent an hour or two. There is also evidence that Lansing had previously done paid work as an engineer on other projects.  And differing inferences may be drawn from the inconclusive evidence regarding the extent of discretion exercised by Lansing with respect to the modifications.

On this record, Lansing has not established as a matter of law that he bears no responsibility for the design of the McGregor Village Apartments within the meaning of the Fair Housing Act.  This is an issue for the trier of fact to evaluate.

The other issues raised by Lansing do not warrant summary judgment in his favor. Lansing's cross motion for summary judgment dismissing all claims against him is denied.  The motion by the United States insofar as it seeks partial summary judgment imposing liability on Lansing is denied.

### *Mountain Ledge Defendants*

The Mountain Ledge defendants' cross motion for summary judgment (Dkt. No. 142) is based on a number of grounds: that they did not design or construct the McGregor Village Apartments within the meaning of 42 U.S.C. § 3604(f)(3)(C); that there are questions of fact regarding whether the McGregor Village Apartments complex fails to comply with section 3604(f)(3)(C); that the Mountain Ledge defendants made reasonable accommodations for allegedly handicapped tenants; that there is indisputable evidence that Gloria Minet is not handicapped; that there is no evidence to support a claim for civil penalties or punitive damages; and that claims by plaintiff and Gloria Minet for monetary damages are barred by the applicable statutes of limitations. The Court has already ruled that the Mountain Ledge defendants are not entitled to summary judgment on statute of limitations grounds; that as a matter of law the

McGregor Village Apartments complex fails to comply with section 3604(f)(3)(C); and that there are questions of fact regarding Gloria Minet's handicapped status.  Thus, the remaining issues with respect to these defendants are as follows:

> 1. Whether the Mountain Ledge defendants designed or constructed the McGregor Village Apartments within the meaning of 42 U.S.C. § 3604(f)(3)(C);
>
> 2. Whether the Mountain Ledge defendants made reasonable accommodations for allegedly handicapped tenants; and
>
> 3. Whether there is any evidence to support a claim for civil penalties or punitive damages.

The Court now addresses these issues.

> ### 1. Whether the Mountain Ledge defendants designed or constructed the McGregor Village Apartments within the meaning of 42 U.S.C. § 3604(f)(3)(C)

The Mountain Ledge defendants contend that they did not design or construct the McGregor Village Apartments within the meaning of 42 U.S.C. § 3604(f)(3)(C).  In his deposition, Michael Dennis ("Dennis") testified that he makes the management decisions for the Mountain Ledge entities; that in 1996 the Mountain Ledge defendants decided to develop a multifamily housing complex on land owned by Mountain Ledge, L.P.[11]; that in pursuit of this project Dennis talked with Paul Tommell ("Tommell"), a surveyor, in connection with "laying out a parcel of property in McGregor Village for apartments"; that Dennis then "look[ed] for a builder"; that he contacted Bruce Tanski; that Bruce Tanski showed Dennis some of the apartment complexes he had built; that Dennis liked them and requested him to "price out" the cost of building them at McGregor Village; and that Bruce Tanski orally quoted a "per unit" price, which Dennis accepted.  There was no written contract.  Dennis understood Bruce Tanski's

---

[11] Michael Dennis is the sole shareholder, officer, and director of the development corporation which is the general partner in Mountain Ledge, L.P., a member of Mountain Ledge, L.L.C.  The sole business of Mountain Ledge, L.L.C. is to own and operate the McGregor Village Apartments.

responsibilities with respect to the McGregor Village Apartments project to be "to construct the same building that he had constructed down in Halfmoon [Court] and Clifton Park." Dennis said he did not see any plans for the buildings before construction was completed. He does not remember ever meeting Lansing, and does not know whether Lansing played a role in developing the McGregor Village Apartments complex.

Dennis further testified that he handled the approval process with the planning board and obtained financing for the project. Dennis testified: "My responsibility was to make sure that all of the infrastructure was installed, that includes the pavement for the parking areas and the roadway system within the apartment project." Dennis asked Bruce Tanski for a "foundation plan" so that Tommell and the engineers could "plot the buildings on a piece of land." Bruce Tanski sent the plans to Tommell, and Tommell hired an engineering firm, Keystone Associates, on behalf of Dennis. Tommell and Keystone Associates were also responsible for the parking lot and sidewalk layouts. At some point Dennis reviewed the site plan they prepared, to make sure it was complete and contained "all the details that are required on subdivision plans, like Department of Environmental Conservation, New York State Department of Health, Town of Wilton, are all being met." He hired the company that painted the stripes on the parking lots, including the handicapped parking spaces and access aisles.

Dennis testified to the effect that neither he nor his employees were involved in the construction process. Bruce Tanski obtained the building permit and proceeded with construction. The construction foreman, Joseph Aschauer, and the workers were employees of Bruce Tanski.

In his declaration, Dennis states:

> I considered Mr. Tanski as an independent contractor, and assumed that, as long as the Town of Wilton Building Department issued building permits and certificates of occupancy for the apartment buildings, I did not have to be concerned about

> compliance with building regulations or Codes.  I knew the Town of Wilton
> Building Inspectors and Code Enforcement Officers would have to review Mr.
> Tanski's building plans and that the Town required builders to provide plans
> drawn by licensed professionals.
>
> For the site work and infrastructure, I hired a licensed surveyor, Paul Tommell,
> whom I also knew because he had previously done work for me in connection with
> my residential subdivision. I was aware that Mr. Tommell had a great deal of
> experience in appearing before planning boards and that he was very well versed
> in the details and procedures for obtaining site plan approvals for projects.

The United States argues that Dennis, as general contractor of McGregor Village

Apartments, was directly involved in the project from its inception, including the conceptual

phases of the project.  It points out that Dennis admitted that he had the authority to stop

construction at the project; that he and the Mountain Ledge defendants were responsible for

selecting the building design to be used at the McGregor Village Apartments; that he caused the

site plan for McGregor Village Apartments to be prepared and submitted the plans to the Town of

Wilton for approval; and that he participated in installing the infrastructure necessary to support

the McGregor Village Apartments.

The Court agrees with those courts that have held that liability under the Fair Housing Act

for discriminatory design and construction should be imposed broadly.  *See, e.g., Taigen*, 303

F.Supp.2d at 1148-49; *Montana Fair Housing*, 81 F.Supp.2d at 1068; *Baltimore Neighborhoods*

*(Rommel Buiders)*, 3 F.Supp.2d at 665.   The statute's terms are expansive (for example, it states

that discrimination "includes" conduct "in connection with" the design and construction,

specifically the failure to design and construct "in such a manner" that the accessibility standards

are met), and the requirements themselves are broad (for example, the public use and common use

areas are to be "readily accessible to and usable by" handicapped people).  There are no express

statutory limitations on possible defendants.  As stated by one court: "When a group of entities

enters into the design and construction of a covered dwelling, all participants in the process as a

whole are bound to follow the FHA.... In essence, any entity who contributes to a violation of the FHA would be liable." *Baltimore Neighborhoods (Rommel Buiders)*, 3 F.Supp.2d at 665 (emphasis in original).  A participant cannot escape liability merely by showing reliance on the expertise or assurances of another participant.  *See Quality Built*, 309 F.Supp.2d at 761-62; *United States v. Pacific Northwest Elec., Inc.*, 2003 WL 24573548, *14 (D.Idaho) (stating that each defendant involved in the design and/or construction of the covered dwellings had "an independent, non-delegable duty to comply with the requirements of the FHA.").  Moreover, the Fair Housing Act provides for vicarious liability.  *See Taigen*, 303 F.Supp.2d at 1148 (citing *Meyer v. Holley*, 537 U.S. 280 (2003)).  The purpose of the Fair Housing Act to create available housing for the handicapped is best served by imposing broad liability on all those people and entities that are involved in designing and constructing the various aspects of a covered multi-family dwelling.

Here, the Mountain Ledge defendants owned the property, decided to build the apartment complex, determined the type of buildings to be constructed, hired the builder, retained a surveyor, oversaw the installation of the infrastructure including parking areas and the roadway system, handled the approval process with the planning board, and obtained financing for the project.  The involvement of the Mountain Ledge defendants, including Michael Dennis, in the design and construction of the McGregor Village Apartments – as owner, planner, and general contractor – is clearly sufficient to warrant liability as a matter of law.  Accordingly, the Mountain Ledge defendants' cross motion for summary judgment on this ground is denied.

### 2. Whether the Mountain Ledge defendants made reasonable accommodations for handicapped tenants

In support of their contention that they made reasonable accommodations for allegedly handicapped tenants, the Mountain Ledge defendants rely on the statements of Anton Fowler,

apartment manager for McGregor Village Apartments from August 1998 to April 2002, that during Gloria Minet's tenancy beginning in 1999, McGregor Village Apartments has complied with her requests for a wheelchair ramp, repairs to the ramp, replacement of the ramp, a designated handicapped parking spot in front of her apartment, grab bars in her bathroom, and a levered door handle on her entry door.  He states that Gloria Minet requested repairs to her ramp several times, that repairs were made whenever required, but that occasionally no repair was needed and thus no repair was made.  He denies that she ever requested a roll-in shower or an accessible dumpster.  The Mountain Ledge defendants also assert that they made reasonable accommodations for other tenants.

Gloria Minet's declaration alleges a number of incidents when the Mountain Ledge defendants did not make appropriate modifications which she requested.  In particular, she specifies instances when the Mountain Ledge defendants did not make needed repairs to her ramp despite her requests.  Whether the Mountain Ledge defendants are subject to liability for refusal to make accommodations under 42 U.S.C. § 3604(f)(3)(B) cannot be determined on this record.  And such accommodations, even if made, are not relevant to the question of design-and-construction liability under section 3604(f)(3)(C).

### 3. Whether there is evidence to support a claim for civil penalties or punitive damages against the Mountain Ledge defendants

The Mountain Ledge defendants cross move for dismissal of the claim for civil penalties or punitive damages, contending that there is no evidence to support such a claim.  The United States does not seek partial summary judgment on this issue.  In opposing the Mountain Ledge defendants' cross motion in this regard, the United States relies on evidence that Dennis and the Mountain Ledge defendants were repeatedly put on notice before the completion of the McGregor Village Apartments project that it was not being constructed in compliance with accessibility

requirements, yet they did nothing.  Thus, the United States argues, there is a disputed question of

material fact on the issue of whether the Mountain Ledge defendants acted with reckless or

callous disregard of the rights asserted and intentionally violated federal law.  The Mountain

Ledge defendants' cross motion is denied in this respect.

        *The Tanski Defendants*

        The Tanski defendants do not dispute that they were involved in the construction of

McGregor Village Apartments and the Tanski properties, and that all of these properties contain

covered units.  As against the Tanski defendants, the United States alleges discrimination only

through design and construction, not through failure to make reasonable accommodations.  As

discussed above, the Tanski defendants do not dispute the United States' factual assertions

regarding the units' inaccessible features.

        In their cross-motion, the Tanski defendants raise statutes of limitations issues.  As

discussed above, the Court denies dismissal on statutes of limitations grounds.

        The Tanski defendants also urge that granting partial summary judgment to the United

States would be premature.  They rely on the January 11, 2006 order (Dkt. No. 116) of United

States Magistrate Judge Randolph F. Treece extending the deadline for discovery relative to

plaintiff's claims on behalf of aggrieved persons, including disclosure of each person's handicap,

medical history, discriminatory acts alleged, and damages.  The need for this disclosure, however,

does not prevent the Court from ruling on the statutes of limitations issues or on the question of

the Tanski defendants' violations of section 3604(f)(3)(C).  The Memorandum-Decision and

Order herein does not decide any issues on which this disclosure is relevant.

        The Tanski defendants also urge that there are questions of fact regarding whether the

United States is authorized to prosecute Count II pursuant to section 3614(a).  Specifically, they

urge that there are questions of fact regarding whether  defendants "engaged in a pattern or

practice of resistance to the full enjoyment of any of the rights" under the Fair Housing Act, and whether "any group of persons has been denied any of the rights granted by [the Fair Housing Act] ... and such denial raises an issue of general public importance[.]" 42 U.S.C. § 3614(a).

In support of this argument, the Tanski defendants argue first that there is a question of fact regarding whether they engaged in "a pattern or practice of resistance to the full enjoyment of the rights" granted by the Fair Housing Act. Having already found multiple violations of section 3604(f)(3)(C) in a total of 362 covered units in the McGregor Village Apartments and the six Tanski properties, all built by the Tanski defendants, the Court has no difficulty finding a pattern or practice of Fair Housing Act violations. *See, e.g., Quality Built*, 309 F.Supp.2d at 760.

The Tanski defendants further argue that the United States has not met the alternative standard in section 3614(a), *i.e.*, that "any group of persons has been denied any of the rights" granted by the Fair Housing Act and that "such denial raises an issue of general public importance." Again, having found as a matter of law that 362 covered units at the subject properties constructed by the Tanski defendants contain multiple violations of section 3604(f)(3)(C), the Court has no difficulty finding as a matter of law that rights under the Fair Housing Act have been denied to a group of persons, that is, all handicapped people who might desire to rent or visit a dwelling in any of the properties. And the same finding establishes the existence of an issue of public importance, even assuming that district court has the authority to review the Attorney General's determination in this respect. *See Taigen*, 303 F.Supp.2d at 1139. The Tanski defendants' request for dismissal on this ground is denied.

The Tanski defendants also argue that any equitable relief, such as retrofitting all noncompliant covered units, should await trial. This argument is discussed below.

**Conclusion – Liability**

Accordingly, the Court grants the United States' request for partial summary judgment on

liability against the Mountain Ledge defendants and the Tanski defendants for failure to design and construct the McGregor Village Apartments in compliance with 42 U.S.C. § 3604(f)(3)(C); grants the United States' request for partial summary judgment on liability against the Tanski defendants for failure to design and construct the Tanski properties in compliance with 42 U.S.C. § 3604(f)(3)(C); denies the United States' request for partial summary judgment on liability against Lansing for failure to design and construct the Tanski properties in compliance with 42 U.S.C. § 3604(f)(3)(C); and denies the United States' request for partial summary judgment on liability against the Mountain Ledge defendants for failure to accommodate Gloria Minet under 42 U.S.C. § 3604(f)(3)(B).  The defendants' cross motions are denied.

## REMEDIAL PLANS

On this motion, the United States requests that, in addition to granting partial summary judgment as to defendants' liability, the Court require the defendants to submit detailed remedial plans with appropriate timetables identifying how they will timely eliminate the discriminatory conditions found to exist.

The Tanski defendants argue that any equitable relief, such as retrofitting all noncompliant covered units, should await trial.  They point out that the Court has broad discretion in considering the necessity and scope of such relief, and urge that "consideration should be given to the nature of the alleged pattern or practice of discrimination, the degree of noncompliance, whether the discrimination was intentional, what accommodations were made by defendants, testimony of the persons living in the subject apartments, and weighing of the relative costs and benefits."  They also argue that, although they participated in the construction of the apartment buildings, "they

relied upon the professional expertise of the co-defendants, as well as the local building code officials who certified the work as compliant with all applicable laws."

Remedial relief in the form of "retrofitting" or a "retrofitting fund" has been found to be an appropriate remedy for noncompliance with the accessability provisions of the Fair Housing Act. *See, e.g., Baltimore Neighborhoods, Inc., v. LOB, Inc.*, 92 F.Supp.2d 456, 467 (D.Md. 2000); *Balachowski v. Boidy*, 2000 WL 1365391, *14-15 (N.D.Ill. Sept. 20, 2000); *Secretary, United States Dep't of Housing and Urban Dev't v. Perland*, 1998 WL 142159, *13-14 (H.U.D.A.L.J.). Such relief has also been awarded in some form in a number of cases under the Americans with Disabilities Act. *See, e.g., Lieber v. Macy's West, Inc.*, 80 F.Supp.2d 1065, 1081 (N.D.Cal. 1999); *Coalition of Montanans Concerned with Disabilities, Inc. v. Gallatin Airport Auth.*, 957 F.Supp. 1166, 1171 (D.Mont.1997); *Paralyzed Veterans of America v. Ellerby Becket Architects & Engineers, P.C.*, 950 F.Supp. 393, 405 (D.D.C. 1996). Here, the United States' expert, William Hecker, stated that it was his professional opinion that the "subject properties can be retrofitted to remove the barriers and provide features that will make the public and common use areas of the complexes readily accessible to and usable by persons with disabilities."

The Court has determined that the Tanski defendants are liable as a matter of law for violating section 3604(f)(3)(C) in the construction of the Tanski properties. On this record, the Court finds that an order directing remediation is appropriate. The Court has considered the issues raised by the Tanski defendants and finds that they do not warrant denial of such relief. The Court orders the Tanski defendants to submit, within 45 days of the date of this Memorandum-Decision and Order, a detailed remedial plan with appropriate timetables to retrofit the noncompliant units in the Tanski properties so that they comply with the Fair Housing Act. The United States is directed to respond within 30 days thereafter. The Tanski defendants and the United States are encouraged to work towards reaching an agreement on the remedial plan.

Likewise, inasmuch as the Court has determined that the Mountain Ledge defendants and the Tanski defendants are liable as a matter of law for violating section 3604(f)(3)(C) in the

design and construction of the McGregor Village Apartments, the Court finds that an order

directing remediation is appropriate.  The Court orders the Mountain Ledge defendants and the

Tanski defendants to submit, within 45 days of the date of this Memorandum-Decision and Order,

a detailed remedial plan with appropriate timetables to retrofit the noncompliant units in

McGregor Village Apartments so that it complies with the Fair Housing Act.  The United States

is directed to respond within 30 days thereafter.  The Mountain Ledge defendants, the Tanski

defendants, and the United States are encouraged to work towards an agreement on the remedial

plan, including the allocation of responsibility between the Mountain Ledge defendants and the

Tanski defendants.  The parties may also wish to consider that, if he is ultimately found to be

liable for a violation of section 3604(f)(3)(C), Lansing will likely be directed to contribute to a

retrofitting fund.

        The parties will be notified of a trial date for the remaining issues concerning damages

and Lansing's liability.

                                      **CONCLUSION**

        It is therefore

        ORDERED that the motion by plaintiff United States of America (Dkt. No. 123) is
granted in part as follows:

- •        summary judgment is granted as to liability for violations of 42 U.S.C. §
           3604(f)(3)(C) against defendants Mountain Ledge Development Corp., Mountain
           Ledge L.P., Mountain Ledge L.L.C., and Michael Dennis, with respect to
           McGregor Village Apartments;

- •        summary judgment is granted as to liability for violations of 42 U.S.C. §
           3604(f)(3)(C) against defendants Bruce Tanski and Bruce Tanski Construction and
           Development Company, L.L.C., with respect to McGregor Village Apartments;
           Clifton Court North Apartments; Carol Jean Estates; Cranberry Estates; Andrea
           Court; Halfmoon Court; and Pine Ridge II Apartments;

- •        defendants (except Yates Scott Lansing) are required to submit remedial plans as
           set forth hereinabove within 45 days of the date of this Memorandum-Decision and
           Order, and the United States is directed to respond within 30 days thereafter; and

• trial will be scheduled as to all other issues;

and the motion is otherwise denied; and it is further

ORDERED that cross motion (Dkt. No. 138) by defendant Yates Scott Lansing is denied; and it is further

ORDERED that the cross motion (Dkt. No. 140) by defendants Bruce Tanski and Bruce Tanski Construction and Development Company, L.L.C. is denied; and it is further

ORDERED that the cross motion by Mountain Ledge Development Corp., Mountain Ledge L.P., Mountain Ledge L.L.C., and Michael Dennis (Dkt. No. 142) is denied; and it is further

ORDERED that the letter motion (Dkt. No. 149) by the United States is granted, the Court strikes for purposes of this motion Exhibit 19 to Dkt. No. 142, and the Court directs  Mountain Ledge Development Corp., Mountain Ledge L.P., Mountain Ledge L.L.C., and Michael Dennis to produce the documents in issue.

IT IS SO ORDERED.

March 30, 2007
Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge