IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

JAN 2 2 2008

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BRUCE TANSKI; BRUCE TANSKI | ) |
| CONSTRUCTION AND DEVELOPMENT | ) |
| COMPANY, L.L.C.; CLIFTON | ) |
| COURT APARTMENTS L.L.C.; | ) |
| MOUNTAIN LEDGE, L.P.; | ) |
| MOUNTAIN LEDGE, | ) |
| L.L.C.; MOUNTAIN LEDGE | ) |
| DEVELOPMENT CORP.; | ) |
| MICHAEL DENNIS; | ) |
| HOWARD F. JACOBSON; | ) |
| YATES SCOTT LANSING, | ) |
| | ) |
| Defendants. | ) |

Civil Action No. 04-CV-714
NAM/RFT

## CONSENT ORDER

## I.  INTRODUCTION

### A. Background

1.      This Consent Order is entered among the United States ("Plaintiff") and Defendants: Bruce Tanski, Clifton Court Apartments L.L.C., and Bruce Tanski Construction and Development Company L.L.C. (hereinafter "the Tanski Defendants"); Mountain Ledge L.P., Mountain Ledge L.L.C., Mountain Ledge Development Corp., and Michael Dennis (hereinafter "the Mountain Ledge Defendants").

Page 1 of 52

2.      This action is brought by the United States on behalf of Gloria Minet ("the Aggrieved Party") pursuant to the Fair Housing Act ("FHA" or "the Act"), 42 U.S.C. § 3612(o), and under the provisions of 42 U.S.C. § 3614(a), which authorize the Attorney General to initiate litigation under the Act when he has reasonable cause to believe that persons have engaged in a pattern or practice of discrimination or they have denied rights under the Act to a group of persons raising an issue of general public importance. Specifically, the United States alleges, and the United States District Court for the Northern District of New York has found, that the Tanski Defendants discriminated against persons with disabilities, including Ms. Minet, by failing to design and construct seven apartment complexes ("the subject properties") with the features of accessible and adaptable design required by the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(C), and its implementing regulations, and the Mountain Ledge Defendants discriminated against persons with disabilities, including Ms. Minet, by failing to design and construct one of the subject properties with features of accessible and adaptable design required by the foregoing statute and regulations.   The United States also alleges that the Mountain Ledge Defendants violated the Act when they denied Gloria Minet reasonable accommodations necessary to afford her an equal opportunity to use and enjoy a dwelling.  Finally, the United States alleges that the Tanski Defendants, by refusing to rent second-floor apartments to families with children, violated the Act by discriminating on the basis of familial status.

**B. Defendants**

3.    Defendant Bruce Tanski Construction and Development Company, L.L.C. is incorporated under the laws of New York, and has its principal place of business in Clifton Park, New York.

4.    Defendant Bruce Tanski is an officer, principal, employee, or agent of Bruce Tanski Construction and Development Company, is a citizen of New York, and resides in Clifton Park, New York.

5.    Defendant Clifton Court Apartments L.L.C. is incorporated under the laws of New York, and has its principal place of business in Clifton Park, New York.

6.    Defendant Bruce Tanski is an officer, principal, employee, or agent of Clifton Court Apartments L.L.C.

7.    Defendant Mountain Ledge, L.P. is a limited partnership organized under the laws of New York, and has its principal place of business in Saratoga Springs, New York.

8.    Defendant Mountain Ledge, L.L.C. is a limited liability corporation organized under the laws of New York, and has its principal place of business in Saratoga Springs, New York.

9.    Defendant Mountain Ledge Development Corp. is a corporation organized under the laws of New York, and has its principal place of business in Saratoga Springs, New York.

10.    Defendant Michael Dennis is the sole shareholder and president of Mountain Ledge Development Corp., is a citizen of New York, and resides in Saratoga Springs, New York.

11.     The Court has found that the Mountain Ledge Defendants and the Tanski Defendants were responsible for the design, construction, and development of the McGregor Village Apartments.

12.     The Court has also found that the Tanski Defendants were responsible for the design, construction, and development of the following apartment complexes: Halfmoon Court; Carol Jean Estates; Cranberry Estates; Clifton Park North; Andrea Court; Pine Ridge II (hereinafter "the Tanski properties").

13.     The six Tanski properties, together with the McGregor Village Apartments, comprise the subject properties.

14.     The Court has found that the subject properties are subject to, and do not comply with, the accessible design and construction requirements of 42 U.S.C. § 3604(f)(3)(C).

**C. Relevant Requirements of the Fair Housing Act.**

15.     The Fair Housing Act provides that it shall be unlawful (1) to refuse to rent after the making of a bona fide offer, or to refuse to negotiate for the rental of, or otherwise make unavailable or deny, a dwelling to any person because of familial status, and (2) that it shall be unlawful to discriminate against any person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith, because of familial status.  42 U.S.C. § 3604(a), (b).

16.     The Fair Housing Act prohibits discrimination on the basis of disability, including a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a person equal opportunity to use and enjoy a dwelling.  42 U.S.C. § 3604(f)(3)(B).

17.    The Fair Housing Act provides that, for non-elevator residential buildings with four or more dwelling units, all ground floor units that are designed and constructed for first occupancy after March 13, 1991, are "covered multifamily dwellings" and must include certain basic features of accessible and adaptable design to make such units accessible to or adaptable for use by a person who has or who develops a disability. 42 U.S.C. § 3604(f)(3)(C) and (f)(7)(B).

18.    The accessible and adaptable design provisions of the Fair Housing Act require that for covered multifamily dwellings: (i) the public use and common use portions of such dwellings are readily accessible to and usable by persons with a disability; (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by persons with a disability using wheelchairs; and (iii) all premises within such dwellings contain the following features of adaptive design: (I) an accessible route into and through the dwelling; (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; (III) reinforcements in bathroom walls to allow later installation of grab bars; and (IV) usable kitchens and bathrooms such that an individual using a wheelchair can maneuver about the space. 42 U.S.C. § 3604(f)(3)(C). These features are referenced in this document as the "Accessible Design Requirements."

19.    The subject properties comprise 84 two-story buildings, each of which contains between 4 and 12 two-bedroom apartments. The subject properties have 724 apartments, of which 362 are ground-floor apartments. These apartments (or units) are "dwellings" within the meaning of 42 U.S.C. § 3602(b). All 362 ground floor units in the buildings at the

subject properties were designed and constructed for first occupancy after March 13, 1991. As such, the Court has found that these ground-floor units are "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604(f)(7)(B) and must comply with the Fair Housing Act's design and construction requirements. In addition, the public and common use areas at the subject properties must comply with the design and construction requirements of 42 U.S.C. § 3604(f)(3)(C).

20.     The Court has identified the following failures by the Defendants to meet the Accessible Design Requirements, including: 1) a failure to design and construct the public and common use areas so as to be readily accessible to and usable by a person with a disability because exterior routes have excessively steep running and cross slopes, lack curb ramps or have non-compliant curb ramps, and include steps, and mailboxes are mounted so as to be inaccessible; 2) a failure to design and construct the covered dwellings so as to be readily accessible to and usable by a person with a disability because the covered units lack the following features of accessible design: i) an accessible route into and through the dwelling as all 362 units have steps on the route into the unit, in addition to the violations listed above in this paragraph; ii) reinforcements in bathroom walls in covered units to allow later installation of grab bars; and iii) usable kitchens and bathrooms, such that an individual using a wheelchair can maneuver about the space, including adequate clear floor space beyond the swing of the bathroom door and an accessible approach to the kitchen range.

**D. Consent of the Parties to Entry of This Order**

21.    The Parties agree that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1345 and 42 U.S.C. §§ 3612(o) and 3614(a). The Parties further agree that the controversy should be resolved without further proceedings or an evidentiary hearing.

22.    The Defendants deny the United States' claims.

23.    As indicated by the signatures below, all parties agree to the entry of this Consent Order.

24.    Consistent with the terms of the stipulation presented to Judge Treece at the settlement of the trial in this matter, the parties agree that this Consent Order constitutes a full and complete resolution of any and all fair housing claims and housing discrimination claims set forth, or that could have been set forth, in the complaint and amended complaints in this lawsuit.

Therefore, it is hereby **ORDERED, ADJUDGED** and **DECREED**:

## II.   GENERAL INJUNCTION

25.    The Defendants, and each of their officers, employees, agents, successors, and assigns, and all other persons in active concert or participation with any of them, are enjoined from discriminating on the basis of disability as prohibited by the Fair Housing Act, 42 U.S.C. § 3604(f).

26.    The Tanski Defendants, and each of their officers, employees, agents, successors, and assigns, and all other persons in active concert or participation with any of them, are enjoined from discriminating on the basis of familial status as prohibited by the Fair Housing Act, 42 U.S.C. § 3604(a)–(c).

### III. RETROFIT OF GROUND FLOOR UNITS AND PUBLIC AND COMMON USE AREAS AT THE SUBJECT PROPERTY

27.   The Court has held that certain features of the ground-floor apartments and public and common use areas of the subject properties do not meet the design and construction requirements of the Fair Housing Act. To address these deficiencies, Defendants shall undertake corrective actions with respect to the public and common use areas and the covered ground-floor dwellings necessary to bring the McGregor Village Apartments into compliance with the Act and the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (1991) ("Guidelines") by remedying the violations listed in Appendix A. The Tanski Defendants also agree to bring the Tanski properties into compliance with the Act and the Guidelines by remedying the violations listed in Appendix B.[1]

28.   As soon as reasonably possible after entry of the Consent Order, but in any event not more than nine (9) months from the date of its entry, Defendants shall complete the retrofits to the interiors of all McGregor Village ground-floor units occupied by a person who identifies himself or herself as a person with a disability, or as someone associated with a person with a disability, and who notifies the Defendants within forty-five (45) days following receipt of a Notice to Tenants in the form set forth in Appendix C that he/she desires the retrofits. If a tenant requests interior retrofits within this forty-five (45)

---

[1]   HUD regulations provide that "[a] public or common use area that complies with the appropriate requirements of ANSI A117.1-1986 or a comparable standard is accessible." See 24 C.F.R. 100.201 (2002). HUD interprets "comparable standard" to mean a "standard that affords [persons with a disability] access essentially equivalent to or greater than that required by ANSI A117.1." See 54 Fed. Reg. 3243 (Jan. 23,, 1989). Should Defendants elect to follow a standard other than ANSI for making the public and common-use areas accessible, they will inform the United States in writing of the standard.

day period, and the Defendants refuse to make such retrofits, the Defendants shall notify the United States of the names of all persons denied retrofits and the reason for the denial. As soon as reasonably possible after the entry of this Consent Order, but in any event not more than two (2) years from the date of its entry, Defendants shall complete the retrofits to all public and common use areas of McGregor Village. As soon as reasonably possible after entry of the Consent Order, but in any event not more than four (4) years from the date of its entry, Defendants shall complete retrofits to the interiors of all remaining ground-floor units at McGregor Village. Defendants shall pay all expenses associated with these modifications and both they and their contractors shall attempt, in good faith, to minimize any inconvenience to the residents of McGregor Village.

29.     Defendants shall enter into a contract with a neutral inspector approved by the United States (hereinafter "Inspector") to conduct on-site inspections of the retrofits that have been performed under this Order to determine if the retrofits have been completed in accordance with this Order and as detailed in Appendix A. Such inspector shall have expertise in the design and construction requirements of the Fair Housing Act and its implementing regulations, the Fair Housing Accessibility Guidelines, and ANSI A117.1 (1986). The inspections shall take place within thirty (30) days of the completion of all of the retrofits to units and common use areas as required by this Order. Defendants shall give the United States at least twenty-one (21) days' notice of the inspections and shall

---

Such standard must provide access that is "essentially equivalent" to or "greater" than ANSI A117.1 (1986).

give the United States an opportunity to have its representative present for the inspections.

30.    The Inspector shall set out the results of each inspection, including deficits, if any, in writing, and shall send that report by mail and by fax to counsel for the United States,[2] and the Defendants. If the inspection indicates that not all of the required retrofits have been made in accordance with this Order and as detailed in Appendix A, Defendants shall correct any deficiencies within a reasonable period of time as determined by the Inspector, and shall pay for another inspection by the same Inspector to certify that the deficiencies have been corrected. This process shall continue until the Inspector certifies that all of the necessary modifications have been made.

31.    Defendants shall pay all fees and costs associated with these inspections, and such payments shall be made without regard to the Inspector's findings. Upon reasonable notice to the Defendants, representatives of the United States shall be permitted to inspect the modifications made by Defendants at McGregor Village in accordance with this Consent Order to ensure compliance.

32.    As soon as reasonably possible after entry of the Consent Order, but in any event not more than nine (9) months from the date of its entry, the Tanski Defendants shall complete the retrofits to the interiors of all Tanski properties' ground-floor units occupied

---

[2] For purposes of this Order, all submissions to the United States or its counsel should be submitted to: Chief, Housing and Civil Enforcement Section, Civil Rights Division, United States Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530, Attn: DJ# 175-50-51, Fax: 202-514-1116, or as otherwise directed by the United States.

by a person who identifies himself or herself as a person with a disability, or as someone associated with a person with a disability, and who notifies the Tanski Defendants within forty-five (45) days following receipt of a Notice to Tenants in the form set forth in Appendix C that he/she desires the retrofits.  If a tenant requests interior retrofits within this forty-five (45) day period, and the Defendants refuse to make such retrofits, the Defendants shall notify the United States of the names of all persons denied retrofits and the reason for the denial.  As soon as reasonably possible after the entry of this Consent Order, but in any event not more than two (2) years from the date of its entry, the Tanski Defendants shall complete the retrofits to all public and common use areas of the Tanski properties.  As soon as reasonably possible after entry of the Consent Order, but in any event not more than four (4) years from the date of its entry, the Tanski Defendants shall complete retrofits to the interiors of all ground-floor units at the Tanski properties.  The Tanski Defendants shall pay all expenses associated with these modifications and both they and their contractors shall attempt, in good faith, to minimize any inconvenience to the residents of the Tanski properties.

33.     The Tanski Defendants shall enter into a contract with a neutral inspector approved by the United States (hereinafter "Tanski Inspector") to conduct on-site inspections of the retrofits that have been performed under this Order to determine if the retrofits have been completed in accordance with this Order and as detailed in Appendix B.  Such inspector shall have expertise in the design and construction requirements of the Fair Housing Act and its implementing regulations, the Fair Housing Accessibility Guidelines, and ANSI A117.1 (1986). The inspections shall take place within thirty (30) days of the completion

of all of the retrofits to units and common use areas as required by this Order remedying the violations identified in paragraph 31. The Tanski Defendants shall give the United States at least twenty-one (21) days' notice of the inspections and shall give the United States an opportunity to have its representative present for the inspections.

34.    The Tanski Inspector shall set out the results of each inspection, including deficits, if any, in writing, and shall send that report by mail and by fax to counsel for the United States and the Defendants. If the inspection indicates that not all of the required retrofits have been made in accordance with this Order and as detailed in Appendix B, the Tanski Defendants shall correct any deficiencies within a reasonable period of time as determined by the Tanski Inspector, and shall pay for another inspection by the same Inspector to certify that the deficiencies have been corrected. This process shall continue until the Inspector certifies that all of the necessary modifications have been made.

35.    The Tanski Defendants shall pay all fees and costs associated with these inspections, and such payments shall be made without regard to the Inspector's findings. Upon reasonable notice to the Tanski Defendants, representatives of the United States shall be permitted to inspect the modifications made by the Tanski Defendants in accordance with this Consent Order to ensure compliance.

36.    Within thirty (30) days of the entry of this Order, the Defendants shall send by first-class mail, postage prepaid, a copy of the Notice at Appendix C to each tenant residing in covered dwelling units at McGregor Village. Within thirty (30) days of the entry of this Order, the Tanski Defendants shall send by first-class mail, postage prepaid, a copy of the Notice at Appendix C to each resident residing in covered dwelling units at the Tanski

properties. These Notices shall inform tenants that: (1) the retrofits being offered are required because of the settlement of this lawsuit and are available at no cost to them; (2) the retrofits will be provided on request by a tenant with a disability but will in any event take place within nine (9) months; and (3) their preferences and convenience will be taken into account in scheduling the retrofits, and relocation costs, if any, will be provided to them in advance. Within forty-five (45) days of entry of this Order, Defendants shall provide to counsel for the United States proof that the Notices have been sent.

37. The sale or transfer of ownership, in whole or in part, of the McGregor Village Apartments shall not affect Defendants' continuing obligations to retrofit the McGregor Village Apartments as specified in this Consent Order, unless Defendants have obtained, in writing, as a condition of sale or transfer, the purchaser or transferee's commitment to be bound by the terms of the Consent Order to complete all required retrofits as specified in Appendix A. Should the Defendants decide to sell or transfer any ownership, in whole or in part, or any portion thereof, prior to the completion of the required retrofits, they shall, at least thirty (30) days prior to completion of the sale or transfer: (a) provide to each prospective purchaser or transferee a copy of this Consent Order, along with written notice that the subject property is covered by this Consent Order, including specifically Defendants' obligations to complete required retrofit work and to allow inspections, or to obtain the purchaser or transferee's commitment to be bound by this Order to do the same, in writing, and (b) provide to the United States, by facsimile and first class mail,

written notice of its intent to sell or transfer ownership, along with a copy of the notice sent to each purchaser or transferee.

38.   The sale or transfer of ownership, in whole or in part, of any of the Tanski properties shall not affect the Tanski Defendants' continuing obligations to retrofit the Tanski properties as specified in this Consent Order, unless the Tanski Defendants have obtained, in writing, as a condition of sale or transfer, the purchaser or transferee's commitment to be bound by the terms of the Consent Order to complete all required retrofits as specified in Appendices A and B.  Should the Tanski Defendants decide to sell or transfer any ownership, in whole or in part, or any portion thereof, prior to the completion of the required retrofits, they shall, at least thirty (30) days prior to completion of the sale or transfer: (a) provide to each prospective purchaser or transferee a copy of this Consent Order, along with written notice that the subject property is covered by this Consent Order, including specifically Defendants' obligations to complete required retrofit work and to allow inspections, or to obtain the purchaser or transferee's commitment to be bound by this Order to do the same, in writing, and (b) provide to the United States, by facsimile and first class mail, written notice of its intent to sell or transfer ownership, along with a copy of the notice sent to each purchaser or transferee.

39.   In the event that a resident of a unit at the McGregor Village Apartments that is scheduled to undergo modification incurs undue inconvenience or hardship (defined as a dislocation from the unit for more than twenty-four (24) hours consecutively), Defendants will offer to pay such resident the applicable government per diem rate for

food and lodging for the local area for each day of undue inconvenience or hardship. Such payment shall be made prior to the commencement of any retrofit work on the resident's unit, so that the resident may use the money to obtain alternative living accommodations while dislocated. In lieu of such per diem payment and only if the resident requests, the Mountain Ledge Defendants may offer such resident comparable accommodations at another McGregor Village unit.

40.  In the event that a resident of a unit at any of the Tanski properties that is scheduled to undergo modification incurs undue inconvenience or hardship (defined as a dislocation from the unit for more than twenty-four (24) hours consecutively), the Tanski Defendants will offer to pay such resident the applicable government per diem rate for food and lodging for the local area for each day of undue inconvenience or hardship. Such payment shall be made prior to the commencement of any retrofit work on the resident's unit, so that the resident may use the money to obtain alternative living accommodations while dislocated. In lieu of such per diem payment and only if the resident requests, the Tanski Defendants may offer such resident comparable accommodations at another Tanski apartment unit.

41.  The Mountain Ledge Defendants may not charge any additional rent, deposit or other fees for the units at McGregor Village in which retrofits are implemented solely because of the contemplated or completed retrofits.

42.  The Tanski Defendants may not charge any additional rent, deposit or other fee for the units at the Tanski properties in which retrofits are implemented solely because of the contemplated or completed retrofits.

## IV.  NONDISCRIMINATION IN FUTURE DESIGN AND CONSTRUCTION

43.    During the term of this Consent Order, each respective Defendant shall maintain and

provide to the United States the following information and statements regarding any

covered multifamily dwellings intended to be purchased, developed, built, designed,

and/or engineered in whole or in part, by it or by any entities in which it or its successors

in interest have a position of control as an officer, director, member, or manager, or have

a ten percent (10%) or larger ownership share:

(a) The name and address of the project;

(b) A description of the project and the individual units;

(c) The name, address and telephone number of any site engineer(s) and/or civil

engineer(s) involved with the project;

(d) A statement from all site engineer(s) and/or civil engineer(s) involved with the project

acknowledging and describing his/her knowledge of and training in the requirements of

Section 804(f)(3)(C) of the Fair Housing Act and in the field of accessible site design and

certifying that he/she has reviewed the engineering documents for the project and that the

design specifications therein fully comply with the requirements of the Fair Housing Act

and the Guidelines;

(e) The name, address and telephone number of the architect(s) involved with the project;

and

(f) A statement from the architect(s) involved with the project acknowledging and

describing his/her knowledge of and training in the requirements of Section 804(f)(3)(C)

of the Fair Housing Act and in the field of accessible housing and site design and

certifying that he/she has reviewed the architectural plans for the project and that the design specifications therein fully comply with the requirements of the Act and Guidelines.

Each respective Defendant shall provide such information to the United States thirty (30) days after entry of this Order, one (1) year after entry of this Order, and then annually for the remainder of the term of this Order, except that the last report shall be submitted sixty (60) days before the expiration of this Order. If the engineering documents or architectural plans are revised, and the revisions could have any impact on the accessibility of the dwellings or complex, such Defendant shall obtain and maintain, and provide to the United States upon request, a statement from the site engineer(s) and/or architect(s), as applicable, that all specifications in the revised engineering documents or architectural plans, as pertinent, comply with the requirements of the Fair Housing Act and the Guidelines.

## V.   COMPENSATION OF AGGRIEVED PERSONS

44.   Within sixty (60) days of the entry of this Order, the Defendants shall pay to the United States the total sum of $155,000 as monetary damages for the purpose of compensating the aggrieved persons listed at Appendix D, with the first payment of $25,000 to be made within ten (10) days of the entry of this Order, the second payment of $55,000 to be made within thirty (30) days of the entry of this Order, and the final payment of $75,000 to be made within sixty (60) days of this Order. No amount shall be paid by the United States pursuant to this paragraph to an individual identified in Appendix D until he/she has executed and delivered to counsel for the United States the release contained at Appendix

E. Counsel for the United States shall provide counsel for the Defendants with a duplicate original copy of each release in connection with the McGregor Village Apartments, and shall provide counsel for the Tanski Defendants with a duplicate original copy of each release in connection with the Tanski properties.

## VI.   PAYMENT TO VINDICATE THE PUBLIC INTEREST

45.   The Defendants will pay to the Plaintiff a payment to vindicate the public interest in the amount of $20,000.  Said sum shall be paid within sixty (60) days of the date of entry of this Order by submitting to the Plaintiff a check payable to the United States of America.

## VII.   EDUCATIONAL PROGRAM

46.   Within thirty (30) days of the entry of this Order Defendants shall provide a copy of this Order to all their respective agents and supervisory employees involved in the design or construction of covered multifamily dwellings and secure the signed statement from each agent or employee acknowledging that he or she has received and read the Order, and has had an opportunity to have questions about the Order answered.  This statement shall be substantially similar to the form of Appendix F.

47.   During the term of this Order, within 30 days after the date he or she commences an agency or employment relationship with any Defendant, each new agent or supervisory employee involved in the design or construction of covered multifamily dwellings shall be given a copy of this Order by the respective Defendant principal or employer, and be required to sign the statement acknowledging that he or she has received and read the Order, and has had an opportunity to have questions about the Order answered.  This statement shall be substantially similar to the form of Appendix F.

48.    Each respective Defendant shall also ensure that he/it and any other employees and agents who have supervisory authority over the design and/or construction of covered multifamily dwellings have a copy of, are familiar with, and personally review, the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (1991), and the United States Department of Housing and Urban Development, Fair Housing Act Design Manual, *A Manual to Assist Builders in Meeting the Accessibility Requirements of the Fair Housing Act* (Aug. 1996, rev. Apr. 1998). Each respective Defendant and his/its respective employees and agents whose duties, in whole or in part, involve the management, sale and/or rental of multifamily dwellings at issue in this case shall be informed of those portions of the Fair Housing Act that relate to accessibility requirements, reasonable accommodations and reasonable modifications.

49.    Within ninety (90) days of the date of entry of this Consent Order, each respective Defendant and his/its respective employees and agents whose duties, in whole or in part, involve supervisory authority over the development, design and/or construction of multifamily dwellings shall undergo training on the design and construction requirements of the Fair Housing Act. The training shall be conducted by a qualified third-party, who is unconnected to Defendants or their employees, agents or counsel, and approved by the United States. All expenses associated with this training shall be borne by Defendants. Each respective Defendant shall provide to the United States, within thirty (30) days after the training, the name(s), addresses(es) and telephone number(s) of the trainer(s); copies of the training outlines and any materials distributed by the trainers; and certifications

executed by each respective Defendant and his/its respective covered employees and agents confirming their attendance, in a form substantially equivalent to Appendix G.

50.    Within ninety (90) days of the date of entry of this Consent Order, the Tanski and Mountain Ledge Defendants, and all of their respective employees and agents whose duties, in whole or part, involve supervisory authority over the rental, management, or operation of their respective subject properties, shall undergo training on the requirements of the Fair Housing Act. During the duration of the order, each respective Defendant shall also ensure that each new employee or agent who participates significantly in the rental or management of apartment units that each respective Defendant owns, attends substantially similar training within ninety (90) days of the date he or she commences employment or agency. The training shall be conducted by a qualified third party, approved by the United States, unconnected to Defendants or their employees, agents or counsel, and any expenses associated with this training shall be borne by Defendants. Each respective Defendant shall provide to the United States, thirty (30) days before the training, the name(s), address(es) and telephone number(s) of the trainer(s); copies of the training outlines and any materials distributed by the trainers; and certifications executed by the covered employees and agents confirming their attendance, in a form substantially equivalent to Appendix G.

## VIII. REASONABLE ACCOMMODATION POLICY

51.    Within sixty (60) days after the date of entry of this Order, and subject to approval by the United States, the Mountain Ledge Defendants shall adopt and implement specific, uniform, and objective written standards and procedures for receiving and handling

requests made by people with disabilities for reasonable accommodations to its rules, policies, practices, or services.  These standards shall comply with the requirements of 42 U.S.C. §§ 3601 *et seq.*, and include the following provisions:

(a)      The Mountain Ledge Defendants shall inform all applicants and occupants of the subject properties that they may request reasonable accommodations of the Mountain Ledge Defendants' rules, policies, practices, and services.  Prior to lease execution, if prospective tenants inquire about reasonable accommodations, the Mountain Ledge Defendants will inform them of their ability to seek reasonable accommodations.

(b)      The Mountain Ledge Defendants shall use the following forms: Request for Reasonable Accommodation ("Request Form") (Appendices H and I); and Approval or Denial of Reasonable Accommodation Request Form ("Approval Form") (Appendix J).  Oral requests for Reasonable Accommodations will be recorded by the Property Manager using the form in Appendix I.

(c)      The Mountain Ledge Defendants shall keep written records of each request for reasonable accommodation to its rules, policies, practices, or services they receive during the duration of this Consent Order.  These records shall include: (a) the name, address, and telephone number of the person making the request; (b) the date on which the request was received; (c) the nature of the request; (d) whether the request was granted or denied; and (e) if the request was denied, the reason(s) for the denial.

(d)        Upon adopting specific, uniform, and objective written standards and procedures for receiving and handling requests made by people with disabilities for reasonable accommodations to its rules, policies, practices, or services, the Mountain Ledge Defendants shall provide written notice, in a form substantially equivalent to Appendix K attached hereto, of those standards to each current and future tenant of the McGregor Village Apartments.

(e)        The Mountain Ledge Defendants shall post the Reasonable Accommodation Policy by which a tenant may request a reasonable accommodation in the leasing office in a conspicuous location, easily viewable to tenants and prospective tenants.

52.     If the Mountain Ledge Defendants propose to change these standards and procedures, they shall first notify the United States and provide a copy of the proposed changes. If the United States does not deliver written objections to the Defendants within sixty (60) days after receiving the proposed changes, the changes may be effected. If the United States makes any objections to the proposed changes within the 60-day period, the specific changes to which the United States objects shall not be effected until the objections are resolved.

## IX.  NOTICE OF NON-DISCRIMINATION POLICY

53.     For the duration of this Consent Order, with respect to the existing complexes owned by a Defendant or any new complexes that a Defendant may develop or construct, that

Defendant shall place, in a conspicuous location, the federal Fair Housing Poster, no smaller than ten (10) by fourteen (14) inches, as described by 24 C.F.R. 110.15 and 110.25, indicating that all dwellings are available for rental on a non-discriminatory basis.

54. For the duration of this Consent Order, in all future advertising in newspapers where the advertisement is more than two (2) square inches, on pamphlets, brochures and other promotional literature, and on any internet website regarding any of the subject properties owned by a Defendant or any new covered multifamily dwelling complexes that a Defendant may develop or construct, that Defendant shall place, in a conspicuous location, a statement that the dwelling units include features for persons with disabilities required by the federal Fair Housing Act.

## X. NOTIFICATION AND DOCUMENT RETENTION REQUIREMENTS

55. Within sixty (60) days after completing the required training, each respective Defendant shall submit an initial report containing the signed statement verifications of attendance for that Defendant and its respective employees and agents who have completed the education training programs specified in Section VII of this Consent Order. Thereafter, during the term of this Order, each respective Defendant shall, one (1) year after its entry and each year thereafter, submit to the United States a report containing the signed statements of new employees and agents verifying that, in accordance with Section VII, they have received and read the Order and had an opportunity to have questions about the Order answered, except that the last report shall be submitted sixty (60) days before the expiration of this Order.

56.     For duration of this Order, each respective Defendant is required to preserve all records related to this Consent Order, for all properties designed, constructed, owned, operated, or acquired by that particular Defendant. Upon reasonable notice to Defendants, representatives of the United States shall be permitted to inspect and copy any such records or to inspect any developments or residential units under their control bearing on compliance with this Consent Order at any and all reasonable times, provided, however, that the United States shall endeavor to minimize any inconvenience to Defendants from such inspections.

57.     For the duration of this Order, each respective Defendant shall advise counsel for the United States in writing within fifteen (15) days of receipt of any formal or informal complaint against that Defendant, its employees or agents, regarding housing discrimination on the basis of disability under the Act. That Defendant shall also promptly provide the United States all information it may request concerning any such complaint. Within fifteen (15) days of the resolution of any such complaints, the particular Defendant shall advise counsel of the United States of such resolution.

58.     During the period in which this Order is in effect, the Tanski Defendants shall advise counsel for the United States in writing within fifteen (15) days of receipt of any formal or informal complaint against them, their employees or agents, regarding housing discrimination on the basis of familial status under the Act. The Tanski Defendants shall also promptly provide the United States all information it may request concerning any such complaint. Within fifteen (15) days of the resolution of any such complaints, the Tanski Defendants shall advise counsel for the United States of such resolution.

## XI.  DURATION OF ORDER AND TERMINATION OF LEGAL ACTION

59.    This Consent Order shall remain in effect for four (4) years after the date of its entry or

eighteen (18) months after the date that the last retrofit to the McGregor Village

Apartments, with respect to the Mountain Ledge Defendants and the Tanski Defendants,

is completed, whichever is longer, and 18 months after the date that the last retrofit to the

Tanski properties with respect to the Tanski Defendants is completed, whichever is

longer.  By consenting to entry of this Order, the United States and the respective

Defendants agree that in the event a Defendant engages in any future violation(s) of the

Fair Housing Act, such violation(s) shall constitute a "subsequent violation" pursuant to

42 U.S.C. § 3614(d)(1)(C)(ii), with respect to that particular Defendant.

60.    The Court shall retain jurisdiction for the duration of this Consent Order to enforce and/or

to implement the terms of the Order, after which time the case shall be dismissed with

prejudice.  The United States may move the Court to extend the duration of the Order in

the interests of justice.

61.    The Parties shall endeavor in good faith to resolve informally any differences regarding

interpretation of and compliance with this Order prior to bringing such matters to the

Court for resolution.  However, in the event of a failure by a Defendant to perform in a

timely manner any act required by this Order or otherwise to act in conformance with any

provision thereof, the United States may move this Court with respect to that Defendant

to impose any remedy authorized by law or equity, including, but not limited to, an order

requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorneys' fees which may have been occasioned by the violation or failure to perform.

## XII.   TIME FOR PERFORMANCE

62.    Any time limits for performance imposed by this Consent Order may be extended by the mutual written agreement of the United States and the relevant Defendants.

## XIII.   COSTS OF LITIGATION

63.   Each party to this litigation will bear its own costs and attorneys' fees associated with this

litigation.

ENTERED THIS *22* day of *January* , 2008.

NORMAN A. MORDUE
UNITED STATES DISTRICT JUDGE

RANDOLPH F. TREECE
UNITED STATES MAGISTRATE JUDGE

The undersigned apply for and consent to the entry of this Order:

*For the United States:*
GRACE CHUNG BECKER
Acting Assistant Attorney General


STEVEN H. ROSENBAUM, Chief
MICHAEL S. MAURER, Deputy Chief
SEAN R. KEVENEY, Trial Attorney
AVERY J. BAKELEY, Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
United States Department of Justice
Housing and Civil Enforcement Section
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Tel: (202) 514-4838; Fax: (202) 514-1116
E-Mail: Sean.R.Keveney@usdoj.gov

*For the Tanski Defendants:*

William J. Dreyer, Esq.
James Peluso, Esq.
Dreyer Boyajian LLP
75 Columbia Street
Albany, NY 12210
Tel.: (518) 463-7784
Fax: (518) 463-4039

*For the Mountain Ledge Defendants*:


Neil H. Rivchin, Esq.
O'Connell and Aronowitz
54 State Street
Albany, NY 12207-1885
Tel.: (518) 462-5601
Fax: (518) 427-6988

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>v.<br><br>BRUCE TANSKI; BRUCE TANSKI<br>CONSTRUCTION AND DEVELOPMENT<br>COMPANY, L.L.C.; CLIFTON COURT<br>APARTMENTS L.L.C.; MOUNTAIN<br>LEDGE, L.P.; MOUNTAIN LEDGE,<br>L.L.C.; MOUNTAIN LEDGE<br>DEVELOPMENT CORP.;<br>MICHAEL DENNIS;<br>HOWARD F. JACOBSON;<br>YATES SCOTT LANSING,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 04-CV-714<br>NAM/RFT<br><br><br><br>**APPENDIX A to CONSENT<br>ORDER** |

## MCGREGOR VILLAGE RETROFITS

The Defendants shall make the following retrofits to the public and common use areas and unit interiors of the McGregor Village Apartments:

1.   The Defendants shall provide eighteen (18) accessible parking spaces at McGregor Village that comply with the requirements of ANSI 117.1 (1986).

2.   The Defendants shall separately connect each ground-floor unit by an accessible route that complies with ANSI 117.1 (1986) to the mailboxes, trash dumpsters, and accessible parking spaces adjacent to and associated with each building in which such ground floor unit is located.  Such routes shall be 48 inches wide, with no abrupt level changes greater than 1/4 inch, with running slopes not to exceed 1:20, and with cross slopes not to exceed 1:50.

3.   The Defendants shall provide accessible trash receptacles that comply with ANSI 117.1, section 4.3.2(2) (1986) at each building on an accessible route from ground-floor units.

4.    The Defendants shall provide accessible mailboxes that comply with ANSI 117.1, sections 4.5.2, 4.3.3, and 4.25.3 (1986) at each building on an accessible route from ground-floor units.

5.    Post-mounted signs designating accessible parking spaces shall comply with ANSI A117.1, section 4.6.2 (1986).

6.    Each ground-floor unit shall have an accessible entrance, including lever door handles and entrance-door thresholds that comply with ANSI A117.1 (1986).

7.    All hardware on interior doorways of ground-floor units shall be replaced with lever hardware.

8.    All interior doorways designed for passage within ground-floor units shall permit a nominal 32-inch clear opening.

9.    Bathroom doors in all ground-floor units shall swing away from the bathroom to allow for a 30- by 48-inch clear floor space inside the bathroom beyond the swing of the door.

10.    The interior and exterior thresholds of the patio doors at all ground-floor units shall comply with ANSI A117.1 (1986).

11.    Patio doors in all ground-floor units shall provide a nominal 32-inch clear opening.

12.    All thermostats in ground-floor units shall be relocated to a maximum height of 48 inches above the floor.

13.    All electrical outlets in ground-floor units shall be relocated in compliance with Fair Housing Accessibility Guideline number 5.

14.    The Defendants shall provide grab bars capable of supporting 250 pounds in the bathrooms of ground-floor units on the request of a tenant with a disability.

15.    The Defendants shall provide 30 by 48 inches of clear floor space parallel to, and centered on, the range in the kitchens of all ground-floor units. The clear floor space shall be unobstructed at any height.

16.    All toilets in all ground-floor units shall be relocated so that the center of the toilet is at least 18 inches from the adjacent bathtub.

17.   The Defendants shall provide 30 by 48 inches of clear floor space parallel to, and centered on, the lavatories in the bathrooms of ground-floor units, or shall provide wall-mounted lavatories or lavatories with removable base cabinets that allow 30 by 48 inches of clear floor space for a forward approach to the lavatories consistent with Fair Housing Accessibility Guideline number 5, illustration (b).

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-CV-714 |
| | ) | NAM/RFT |
| BRUCE TANSKI; BRUCE TANSKI | ) | |
| CONSTRUCTION AND DEVELOPMENT | ) | |
| COMPANY, L.L.C.; CLIFTON COURT | ) | |
| APARTMENTS L.L.C.; MOUNTAIN | ) | |
| LEDGE, L.P.; MOUNTAIN LEDGE, | ) | |
| L.L.C.; MOUNTAIN LEDGE | ) | |
| DEVELOPMENT CORP.; | ) | **APPENDIX B to CONSENT** |
| MICHAEL DENNIS; | ) | **ORDER** |
| HOWARD F. JACOBSON; | ) | |
| YATES SCOTT LANSING, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## TANSKI PROPERTY RETROFITS

The Tanski Defendants shall make the following retrofits to the public and common use areas and unit interiors of the Clifton Court North, Pine Ridge II, Cranberry Estates, Andrea Court, Carol Jean Estates, and Halfmoon Court apartments:

1.  At the Clifton Court North apartments, the Tanski Defendants shall provide 5 accessible parking spaces that comply with the requirements of ANSI 117.1 (1986).

2.  At the Andrea Court apartments, the Tanski Defendants shall provide seven (7) accessible parking spaces that comply with the requirements of ANSI 117.1 (1986).

3.  At the Pine Ridge II apartments, the Tanski Defendants shall provide 11 accessible parking spaces that comply with the requirements of ANSI 117.1 (1986).

4.  At the Halfmoon Court apartments, the Tanski Defendants shall provide 4 accessible parking spaces that comply with the requirements of ANSI 117.1 (1986).

5.   At the Carol Jean Estates apartments, the Tanski Defendants shall provide 8 accessible parking spaces that comply with the requirements of ANSI 117.1 (1986).

6.   At the Cranberry Estates apartments, the Tanski Defendants shall provide 7 accessible parking spaces that comply with the requirements of ANSI 117.1 (1986).

7.   The Tanski Defendants shall separately connect each ground-floor unit by an accessible route that complies with ANSI 117.1 (1986) to the mailboxes, trash dumpsters, and accessible parking spaces adjacent to and associated with each building in which such ground-floor unit is located.  Such routes shall be 48 inches wide, with no abrupt level changes greater than 1/4 inch, with running slopes not to exceed 1:20, and with cross slopes not to exceed 1:50.

8.   The Tanski Defendants shall provide accessible trash receptacles that comply with ANSI 117.1, section 4.3.2(2) (1986) at each building at all of the Tanski properties on an accessible route from ground-floor units.

9.   The Tanski Defendants shall provide accessible mailboxes that comply with ANSI 117.1, sections 4.5.2, 4.3.3, and 4.25.3 (1986) at each building at all of the Tanski properties on an accessible route from ground-floor units.

10.  Post-mounted signs designating accessible parking spaces at all of the Tanski properties shall comply with ANSI A117.1, section 4.6.2 (1986).

11.  Each ground-floor unit shall have an accessible entrance, including lever door handles and entrance-door thresholds that comply with ANSI A117.1 (1986).

12.  All hardware on interior doorways of ground-floor units shall be replaced with lever hardware.

13.  All interior doorways designed for passage within ground-floor units shall permit a nominal 32-inch clear opening.

14.  Bathroom doors in all ground-floor units shall swing away from the bathroom to allow for a 30- by 48-inch clear floor space inside the bathroom beyond the swing of the door.

15.  The interior and exterior thresholds of the patio doors at all ground-floor units shall comply with ANSI A117.1 (1986).

16.  Patio doors in all ground-floor units shall provide a nominal 32-inch clear opening.

17.  All thermostats in ground-floor units shall be relocated to a maximum height of 48 inches above the floor.

18.   All electrical outlets in ground-floor units shall be relocated in compliance with Fair Housing Accessibility Guideline number 5.

19.   The Tanski Defendants shall provide grab bars capable of supporting 250 pounds in the bathrooms of ground-floor units on the request of a tenant with a disability.

20.   The Tanski Defendants shall provide 30 by 48 inches of clear floor space parallel to, and centered on, the range in the kitchens of all ground-floor units.  The clear floor space shall be unobstructed at any height.

21.   All toilets in all ground-floor units at all of the Tanski properties shall be relocated so that the center of the toilet is at least 18 inches from the adjacent bathtub.

22.   The Tanski Defendants shall provide 30 by 48 inches of clear floor space parallel to, and centered on, the lavatories in the bathrooms of ground-floor units at all of the Tanski properties, or shall provide wall-mounted lavatories or lavatories with removable base cabinets that allow 30 by 48 inches of clear floor space for a forward approach to the lavatories consistent with Fair Housing Accessibility Guideline number 5, illustration (b).

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-CV-714 |
| | ) | NAM/RFT |
| BRUCE TANSKI; BRUCE TANSKI | ) | |
| CONSTRUCTION AND DEVELOPMENT | ) | |
| COMPANY, L.L.C.; CLIFTON COURT | ) | |
| APARTMENTS L.L.C.; MOUNTAIN | ) | |
| LEDGE, L.P.; MOUNTAIN LEDGE, | ) | |
| L.L.C.; MOUNTAIN LEDGE | ) | |
| DEVELOPMENT CORP.; | ) | **APPENDIX C to CONSENT** |
| MICHAEL DENNIS; | ) | **ORDER** |
| HOWARD F. JACOBSON; | ) | |
| YATES SCOTT LANSING, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE TO TENANTS

Dear Tenant,

This is to advise you that, as a result of a settlement in a case brought by the United States against the owners of this apartment complex, we have agreed to modify the ground floor units at _____ to provide greater accessibility for people with disabilities. Your unit is one of those that does not meet the accessible and adaptive design requirements of the Fair Housing Act.

Although your apartment unit will be retrofitted automatically within the next four (4) years, we want you to know that if you have a disability, or associate with someone with a disability, you may request to have your apartment modified within the next nine (9) months at no cost to you. If this is your desire, you must notify us in writing within 45 days of your receipt of this Notice. The actual work will take no longer than approximately _____ days, and if the work requires you to be dislocated from your unit for more than 24 hours consecutively, we will provide you with comparable alternative living arrangements during that time. In scheduling when the repairs will take place, we will take into account your preferences and convenience.

Page 37 of 52

You should be aware that this work must be completed within four (4) years, regardless of your intention to stay in your apartment for a longer duration.  Please let us know if you are interested in having the work done now and we will provide you with additional information.

The Management

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>      Plaintiff, )<br><br>v. )<br><br>BRUCE TANSKI; BRUCE TANSKI )<br>CONSTRUCTION AND DEVELOPMENT )<br>COMPANY, L.L.C.; CLIFTON COURT )<br>APARTMENTS L.L.C.; MOUNTAIN )<br>LEDGE, L.P.; MOUNTAIN LEDGE, )<br>L.L.C.; MOUNTAIN LEDGE )<br>DEVELOPMENT CORP.; )<br>MICHAEL DENNIS; )<br>HOWARD F. JACOBSON; )<br>YATES SCOTT LANSING, )<br><br>      Defendants. )<br>_____ ) | Civil Action No. 04-CV-714<br>            NAM/RFT<br><br><br><br>**APPENDIX D to CONSENT<br>ORDER** |

### AGGRIEVED PERSONS

1.  Gloria Lynn Minet, Wilton, NY 12831; (518) 226-0653 -- $40,000.

2.  Dorothy Mosso, Clifton Park, NY 12065; (518) 280-3447 -- $11,000.

3.  Debbie Strock, Clifton Park, NY 12065; (518) 383-8858 -- $5,500.

4.  Walter Niegarzy, Clifton Park, NY 12065; (518) 275-9831 -- $11,000.

5.  Donna Holly, Clifton Park, NY 12065; (518) 383-2089 -- $28,000.

6.  Walter Clevenger, Saratoga Springs, NY 12866; (518) 583-3770 -- $11,000.

7.  Katie Kurtzner, Schenectady, NY 12306; (518) 280-1554 -- $3,000.

8.  Jean and Joseph LeBoeuf, Clifton Park, NY 12065; (518) 348-1529 -- $11,000.

9.      Nancy LeBoeuf, Clifton Park, NY 12065; (518) 348-1529 -- $5,500.

10.     Lesa Scott, Clifton Park, NY 12065; (518) 258-3967 -- $35,000.

11.     Josh Murtagh, Scotia, NY 12302; (518) 382-0122 -- $1,000.

12.     Alicia Guljas, Wilton, NY 12831; (518) 587-0565 -- $11,000.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,    )
    )
        Plaintiff,    )
    )
v.    )    Civil Action No. 04-CV-714
    )    NAM/RFT
BRUCE TANSKI; BRUCE TANSKI    )
CONSTRUCTION AND DEVELOPMENT )
COMPANY, L.L.C.; CLIFTON COURT    )
APARTMENTS L.L.C.; MOUNTAIN    )
LEDGE, L.P.; MOUNTAIN LEDGE,    )
L.L.C.; MOUNTAIN LEDGE    )
DEVELOPMENT CORP.;    )    **APPENDIX E to CONSENT**
MICHAEL DENNIS;    )    **ORDER**
HOWARD F. JACOBSON;    )
YATES SCOTT LANSING,    )
    )
        Defendants.    )
_____)

## FULL AND FINAL RELEASE OF CLAIMS

I, _____, on behalf of myself and family members, agents, heirs, executors, administrators, successors and assigns, pursuant to the terms, provisions, and conditions of the Consent Order approved by the United States District Court for the Northern District of New York on_____, 2008 in the case of <u>United States v. Tanski, et al.</u>, No. 04-cv-714 (N.D.N.Y.) ("lawsuit") and in consideration of the payment of _____ do fully, finally and forever release, discharge, and hold harmless Bruce Tanski; Bruce Tanski Construction and Development Company L.L.C.; Mountain Ledge L.P.; Mountain Ledge L.L.C., Mountain Ledge Development Corp.; Michael Dennis; Howard F. Jacobson; Keystone Associates, Architects, Engineers and Surveyors, L.L.C.; and Yates Scott Lansing (hereinafter "Defendants"), along with their insurers, attorneys, related companies, principals, predecessors, successors, assigns, affiliates, partners, directors, officers, members, agents, employers, shareholders, subsidiaries, employees, former employees, heirs, executors, and administrators and any persons acting under their respective direction or control (hereinafter "Releasees"), from any and all fair housing claims or housing discrimination claims set forth, or which could have been set forth, in the Complaint in this lawsuit that I may have against

Defendants or any of the Releasees for any of Defendants' actions or statements related to those claims through the date of this Consent Order, including claims for damages (both compensatory and punitive), costs, fines and attorneys' fees.

I affirm that the only consideration for signing this Full and Final Release of Claims are the terms stated in the Consent Order signed by the parties, and the monetary payment referenced above. I have accepted the terms of this Release and the Consent Order because I believe them to be a fair and reasonable settlement and for no other reason. This Release and the Consent Order contain and constitute the entire understanding and agreement among the parties.

_____

NAME (PRINT)

_____        _____

SIGNATURE                                              DATE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
|   ) | |
| Plaintiff,   ) | |
|   ) | |
| v.   ) | Civil Action No. 04-CV-714 |
|   ) | NAM/RFT |
| BRUCE TANSKI; BRUCE TANSKI   ) | |
| CONSTRUCTION AND DEVELOPMENT ) | |
| COMPANY, L.L.C.; CLIFTON COURT   ) | |
| APARTMENTS L.L.C.; MOUNTAIN   ) | |
| LEDGE, L.P.; MOUNTAIN LEDGE,   ) | |
| L.L.C.; MOUNTAIN LEDGE   ) | |
| DEVELOPMENT CORP.;   ) | **APPENDIX F to CONSENT** |
| MICHAEL DENNIS;   ) | **ORDER** |
| HOWARD F. JACOBSON;   ) | |
| YATES SCOTT LANSING,   ) | |
|   ) | |
| Defendants.   ) | |

**CERTIFICATION OF FAIR HOUSING TRAINING ATTENDANCE**

I have received a copy of the Consent Order entered in <u>United States v. Tanski, et al.</u>, No. 04-cv-714 (N.D. N.Y.). This Consent Order was explained to me by my employer and all my questions were answered concerning it. I have read and understand the Consent Order.

_____
EMPLOYEE/AGENT NAME (PRINT)

_____      _____
EMPLOYEE/AGENT SIGNATURE         DATE

Page 43 of 52

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-CV-714 |
| | ) | NAM/RFT |
| BRUCE TANSKI; BRUCE TANSKI | ) | |
| CONSTRUCTION AND DEVELOPMENT | ) | |
| COMPANY, L.L.C.; CLIFTON COURT | ) | |
| APARTMENTS L.L.C.; MOUNTAIN | ) | |
| LEDGE, L.P.; MOUNTAIN LEDGE, | ) | |
| L.L.C.; MOUNTAIN LEDGE | ) | |
| DEVELOPMENT CORP.; | ) | **APPENDIX G to CONSENT** |
| MICHAEL DENNIS; | ) | **ORDER** |
| HOWARD F. JACOBSON; | ) | |
| YATES SCOTT LANSING, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF ATTENDANCE

I, _____, hereby acknowledge that on _____
I received training by _____ on the requirements of the Fair Housing Act,
42 U.S.C. §§ 3601-19, and that I have read the Consent Order entered by the United States
District Court for the Northern District of New York in United States v. Tanski, et al.

I understand my obligation not to discriminate in violation of the Fair Housing Act.  I
agree to comply with the Fair Housing Act and the Court's Order in the above-mentioned civil
action.

Sworn to and subscribed before me                   _____
this ___ day of _____, _____.                        (Name)

_____
NOTARY PUBLIC

My commission expires _____.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04-CV-714 |
| ) | NAM/RFT |
| BRUCE TANSKI; BRUCE TANSKI ) | |
| CONSTRUCTION AND DEVELOPMENT ) | |
| COMPANY, L.L.C.; CLIFTON COURT ) | |
| APARTMENTS, L.L.C.; MOUNTAIN ) | |
| LEDGE, L.P.; MOUNTAIN LEDGE, ) | |
| L.L.C.; MOUNTAIN LEDGE ) | |
| DEVELOPMENT CORP.; ) | **APPENDIX H to CONSENT** |
| MICHAEL DENNIS; ) | **ORDER** |
| HOWARD F. JACOBSON; ) | |
| YATES SCOTT LANSING, ) | |
| ) | |
| Defendants. ) | |

**REQUEST FOR REASONABLE ACCOMMODATION**

If you, a member of your household, or someone associated with you has a disability, and you feel that there is a need for a reasonable accommodation to the landlord's rules, policies, practices, or services for that person to have equal opportunity to use and enjoy a dwelling unit or the public or common use areas, please complete this form and return it to your Apartment Manager. Check all items that apply and explain fully. The Apartment Manager will assist you in completing this form, and will answer this request in writing within two weeks (or sooner if the situation requires an immediate response).

Name of Tenant or Applicant: _____

Today's Date:_____

Signature of Tenant or Applicant:_____.

    1.    The person(s) who have a disability requiring a reasonable accommodation is:
_____ Me _____ A person associated or living with me.
Name of person with disability: _____
Phone #:_____
Address:_____

Page 45 of 52

2.     I am requesting the following changes so that I and persons associated or living
with me can live here with equal opportunity to use and enjoy the premises.  I need the
following change in a rule, policy, practice, or service.

_____

_____

_____


3.     I need this reasonable accommodation because:

_____

_____

_____


REQUESTER _____        DATE _____


APARTMENT MANAGER _____        DATE _____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,                )
                                         )
                Plaintiff,               )
                                         )
v.                                       )      Civil Action No. 04-CV-714
                                         )                  NAM/RFT
BRUCE TANSKI; BRUCE TANSKI               )
CONSTRUCTION AND DEVELOPMENT )
COMPANY, L.L.C.; CLIFTON COURT           )
APARTMENTS, L.L.C.; MOUNTAIN             )
LEDGE, L.P.; MOUNTAIN LEDGE,             )
L.L.C.; MOUNTAIN LEDGE                   )
DEVELOPMENT CORP.;                       )      **APPENDIX I to CONSENT**
MICHAEL DENNIS;                          )      **ORDER**
HOWARD F. JACOBSON;                      )
YATES SCOTT LANSING,                     )
                                         )
                Defendants.              )
                                         )

**Form to be completed by Apartment Manager if Requester cannot or will not complete
written form:**

On _____, the requester identified below residing at _____, orally requested
a reasonable accommodation to a rule, policy, practice or service.

The requested accommodation consisted of:

_____

_____

_____

I, the undersigned, Apartment Manager of the _____ Apartments:

_____      Gave the requester the applicable forms and offered to assist in filling out the
             forms.
_____      Granted the request.

Page 47 of 52

_____    Explained the request could not be evaluated until the following additional
information is provided:

_____

_____

_____


_____    _____

REQUESTER                  DATE

REQUESTER'S ADDRESS:_____

REQUESTER'S TELEPHONE NUMBER:_____

_____    _____

APARTMENT  MANAGER          DATE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,                  )
                                           )
              Plaintiff,                    )
                                           )
v.                                         )        Civil Action No. 04-CV-714
                                           )                    NAM/RFT
BRUCE TANSKI; BRUCE TANSKI                 )
CONSTRUCTION AND DEVELOPMENT )
COMPANY, L.L.C.; CLIFTON COURT             )
APARTMENTS, L.L.C.; MOUNTAIN               )
LEDGE, L.P.; MOUNTAIN LEDGE,               )
L.L.C.; MOUNTAIN LEDGE                     )
DEVELOPMENT CORP.;                         )        **APPENDIX J to CONSENT**
MICHAEL DENNIS;                            )        **ORDER**
HOWARD F. JACOBSON;                        )
YATES SCOTT LANSING,                       )
                                           )
              Defendants.                   )
_____)

## APPROVAL OR DENIAL OF REASONABLE ACCOMMODATION REQUEST

Dear: _____:
Address: _____

_____
Phone: (    ) _____
On _____ [date], you requested the following reasonable
accommodation [describe request]:

_____

_____

We have (check all that apply):
___   Approved your request.  The following reasonable accommodation will be permitted
[describe]: _____

___ The change is effected immediately.
___ The reasonable accommodation will be permitted by:
  [date] _____.

Page 49 of 52

___   Can neither approve nor deny your request without further information [List information needed]:

_____

_____

___   Denied your request.  We have denied your request because [list all reasons that  apply]:

_____

_____

_____

We used these facts to deny your request [list]:

_____

_____

_____

To make this decision, we spoke with the following people, reviewed the following documents, and performed the following investigation [list]:

_____

_____

If you disagree with this decision you may contact the Department of Housing and Urban Development (404) 331-5140 or (800) 440-8091 to discuss this matter further.

Sincerely,

Signature:_____     Date_____
Name: _____     Title:_____

Requester acknowledges receipt of this completed form:
Signature: _____     Date:_____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-CV-714 |
| | ) | NAM/RFT |
| BRUCE TANSKI; BRUCE TANSKI | ) | |
| CONSTRUCTION AND DEVELOPMENT | ) | |
| COMPANY, L.L.C.; CLIFTON COURT | ) | |
| APARTMENTS, L.L.C.; MOUNTAIN | ) | |
| LEDGE, L.P.; MOUNTAIN LEDGE, | ) | |
| L.L.C.; MOUNTAIN LEDGE | ) | |
| DEVELOPMENT CORP.; | ) | **APPENDIX K to CONSENT** |
| MICHAEL DENNIS; | ) | **ORDER** |
| HOWARD F. JACOBSON; | ) | |
| YATES SCOTT LANSING, | ) | |
| | ) | |
| Defendants. | ) | |

## REASONABLE ACCOMMODATION POLICY FOR PERSONS WITH DISABILITIES

If a resident or member of a household has a disability, he/she may request a reasonable accommodation. Reasonable accommodations in rules, policies, practices or services may be made when such reasonable accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.

It is preferred that all reasonable accommodation requests be submitted in writing to the Apartment Manager. Requests for reasonable accommodation and release forms are available at the rental office. If a resident or household member has difficulty filling in the form, the Apartment Manager will assist him or her in completing the form. Oral requests for reasonable accommodations will be recorded and processed in accordance with this policy.

All requesters shall be notified in writing of the decision regarding the request within 14 days of the Apartment Manager's receipt of the complete written request, including completed Attachments A, B and C, if necessary. If the request is denied, an explanation for such denial shall be included in the written notification. If the request is denied, the requesting resident may contact the Department of Housing and Urban Development to file a complaint at:

Department of Housing and Urban Development's New York Regional Office of FHEO at 26 Federal Plaza, Suite 3541, New York, NY 10278; Telephone: (212) 264-8000; 1-800-333-4636; Website: http://www.hud.gov/local/index.cfm?state=ny&topic=offices#newyork.